## W. N. COE ET AL. V. THOMAS F. NASH, COUNTY JUDGE.

### No. 569.—Decided June 17, 1897.

**1.   Writ of Error—Petition—Names of Parties—Appearance.**

It is not necessary that a petition for writ of error in the Supreme Court name the defendants in error (Rev. Stats., art. 942); but better that it do so as a guide to the clerk.   The cause is removed on the writ being granted, and the object of the law accomplished when defendants are cited, waive citation, or appear.   (P. 119, 120.)

**2.   Appeal—Error—Death of Party.**

Where a party dies after appeal is perfected the proceedings are not affected, and the case may thereafter be taken to the Supreme Court by writ of error as though he were living.   Rev. Stats., art. 973.)   (P. 120.)

**3.   Treasurer—Sureties—Additional Bond.**

Sureties upon an additional bond required of a county treasurer by the Commissioners Court under Rev. Stats., art. 922, are not liable for defaults which occurred before its execution.   (Pp. 120-122.)

**4.   Same—Treasurer's Reports—Evidence.**

The sureties of a county treasurer are not bound by statements in his report of matters not required by the law to be reported, such as a statement of the amount of money on hand; nor are such statements prima facie evidence against them. (Rev. Stats., arts. 867, 928.)   (P. 122.)

**5.   Commissioners Court—Treasurer's Accounts.**

See opinion for a discussion of the duties of the Commissioners Court with refer ence to examination of the accounts of county treasurers and the effect of a failure to discharge same upon liability of his sureties.   (Pp. 122, 123.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

The suit was brought by Nash, as County Judge, for the use of the county, against Coe, County Treasurer, and his sureties.   Plaintiff recovered and defendants appealed, and on affirmance of the judgment by the Court of Civil Appeals obtained writ of error.

*Morris & Crow*, for plaintiffs in error.—Sureties on the official bond of an officer are not liable for moneys misapplied before the date of such bond.   Hetten v. Lane, 43 Texas, 279; State v. Middleton, 57 Texas, 185; Barry v. Screwmans Association, 67 Texas, 250; Cole v. Crawford, 69 Texas, 124; Britton v. City of Fort Worth, 78 Texas, 227; Arbuckle v. State, 81 Texas, 191; Singer Mfg. Co. v. Ponder, 82 Texas, 653; Farrar v. U. S., 5 Pet., 374; U. S. v. Boyd, 15 Pet., 187; 2 Myers Fed. Dec., sec. 618.

*H. P. Lawther* and *Holloway & Holloway*, for defendant in error.— A report by a county treasurer that a certain balance remains in his hands, is binding on his sureties, because there is a conclusive presumption of law that, by the report, the county has been mislead to its preju-

dice.   Chicago v. Gage, 95 Ill., 595; Cawley v. People, 95 Ill., 249; Doll v. Clark County, 145 Ill., 253; Boone County v. Jones, 54 Iowa' 699; Territory v. Cook, 17 Pac. Rep., 10; State v. Sooy, 39 N. J. L., 539; State v. Newton, 33 Ark., 282.

The use of money collected under one bond to cover a default under a prior bond, is a breach of the second bond, and the sureties are liable for the money so used.   Frownfelter v. State, 66 Md., 80; Sooy v. State, 41 N. J. L., 394; s. c., 39 N. J. L., 539; Egremont v. Benjamin, 125 Mass., 15; Lyndon v. Miller, 36 Vt., 329; State v. Powell, 40 La. Ann., 234; Gwynne v. Burnell, 7 Clark & F., 572.

On the approval of a treasurer's report, the order of the Commissioners Court reciting the balance remaining in the hands of the treasurer, is a matter of record in the nature of a judgment by confession, to which the sureties are privy by virtue of their undertaking that the treasurer shall render true and just accounts.   1 Sayles' Civ. Stats., arts. 975, 977; Rev. Stats., arts. 865, 867; Heath v. Layne, 62 Texas, 687; State v. Wood, 51 Ark., 205; Hunnicutt v. Kirkpatrick, 39 Ark., 172; Wycough v. State, 50 Ark., 102; Fogarty v. Ream, 100 Ill, 366; Bassett v. Granger, 140 Mass., 183; State v. Weaver, 92 Mo., 673; State v. Bilby, 50 Mo. App., 162.

A return of an officer is conclusive on the officer and his sureties.   1 Minor, Inst., 937; 2 Wharton, Ev., secs. 837, 833a; Comrs. v. Mayrant, 2 Brev. (So. Car.), 228; Modissett v. Governor, 2 Blackf., 135.

The orders of the Commissioners Court can not be collaterally attacked, and, until reversed or modified by direct proceedings in the District Court, they are conclusive.   Callaghan v. Salliway, 5 Tex. Civ. App., 239; Gano v. Palo Pinto County, 71 Texas, 99.

A report by a county treasurer approved by the Commissioners Court, is a settlement in the nature of an account stated by the treasurer and his sureties, conclusive on the sureties, because they are made privy to the settlement by their undertaking that the treasurer shall render just and true accounts.   Iglehart v. State, 2 G. & J. (Md.), 235; Stephens v. Shafer, 48 Wis., 54; Mason & F. Co. v. Com. (Ky.), 36 S. W. Rep., 570; Powesheik Co. v. Stanley, 9 Iowa, 511; State v. Ewing, 116 Mo., 129; State v. Shipman; 125 Mo., 439; 1 Freeman on Judgments, sec. 180; Douglas v. Ferris, 138 N. Y., 192; Bellinger v. Thompson, 26 Ore., 320; Stewart v. Morrison, 81 Texas, 399; Stovall v. Banks, 10 Wall., 583; Wycough v. State, 50 Ark., 102; Ball v. Chancellor, 47 N. J. L., 125.

By agreeing that the treasurer will account for and pay over any balance in his hands at or after the giving of their bond, and that the balance so remaining in his hands shall be truly stated in his reports, the sureties agree that he will account for and pay over the balance remaining in his hands, as shown in any report thereafter to be made.   Knox v. Kearns, 73 Iowa, 286; Dugger v. Wright, 51 Ark., 232; Braiden v. Mercer, 44 Ohio St., 339; Com. v. Rhoads, 37 Pa. St., 60; Irwin v.

Backus, 25 Cal., 214; Heard v. Lodge, 20 Pick. (Mass.), 53; Stephens v. Shafer, 48 Wis., 54.

To carry as cash in the treasury a deposit in a broken bank, reporting the amount as cash remaining in the hands of the treasurer, is a breach of the condition of an additional bond that the treasurer will perform the duties of his office, and the sureties are liable for the full amount of the deposit, though the bank suspended before the giving of their bond. 1 Sayles' Civ. Stats., art. 996; Rev. Stats., 1895, art. 928; 1 Morse, Banking, sec. 27b, p. 86; U. S. v. Girault, 11 How., 22; Stovall v. Banks, 10 Wall., 583; Bank v. Morgan, 117 U. S., 96; Knights v. Wiffin, L. R., 5 Q. B., 660; Bank v. Buffington, 97 Mass., 499.

Under Sayles' Civ. Stats., art. 990, an additional bond is retrospective, and binds the sureties for all defaults of the treasurer from the commencement of his term. 1 Sayles' Civ. Stats., art. 990; Rev. Stats., art. 922; Lacoste v. Splivalo, 64 Cal., 35; State v. Hull, 53 Miss., 626; Longmire v. Fain, 89 Tenn., 393.

A retrospective bond is required by an order of the Commissioners Court for an additional bond conditioned as the law requires, "as in the original bond." Longmire v. Fain, 89 Tenn, 393; Armstrong v. State, 7 Blackf., 81.

The bond in suit is made retrospective by the recital that "W. N. Coe was, on the 4th day of November, 1890, duly elected to the office of treasurer," and by the condition that he shall perform the duties required of him by law "as County Treasurer aforesaid." Longmire v. Fain, 89 Tenn., 393; Hatch v. Attleborough, 97 Mass., 533.

An undertaking by the sureties on an additional bond that a treasurer will perform the duties of his office is an undertaking that he will account for and pay over all money with which he is charged when the bond is given. 1 Sayles' Civ. Stats., arts. 960, 975; Rev. Stats., arts. 850, 865; Ennis v. Smith, 14 How., 418; Treweek v. Howard, 105 Cal., 434; Bellinger v. Thompson, 26 Ore., 320; Douglas v. Kessler, 57 Iowa, 63; Foster v. Wise, 46 Ohio St., 20; Pinkstaff v. People, 59 Ill., 148; Steele v. Rees, 6 Yerg. (Tenn.), 263; Roper v. Sangamon Lodge, 91 Ill., 518; Morley v. Metamora, 78 Ill., 394.

Where a treasurer receives money, and is not called on to pay it out during his term, the county has a right to treat his failure to pay it to his successor as the default, for which it will proceed, and for this default it can hold the sureties on any bond in force at the end of the term. Cooley, Taxation, 714 (2d ed.); Murfree, Off. Bonds, sec. 356; State v. Howarth, 48 Conn., 207; Menard County, v. Oeltjen, 56 Ill. App., 138; Brown v. State, 78 Ind., 239; Bocard v. State, 79 Ind., 270; Robinson v. Varnell, 16 Texas, 382; Pinkstaff v. People, 59 Ill., 148.

A treasurer is under a continuing duty to account for and pay over money lost by him before the giving of an additional bond. His failure to do this is a breach of a condition of the additional bond that he will perform the duties required of him by law. Sargent v. Wallis, 67

Texas, 483; Com. v. Gould, 118 Mass., 300; Dugger v. Wright, 51 Ark., 232; Foster v. Wise, 46 Ohio St., 20.

If, after giving a new or additional bond, a treasurer charges himself with money received under a prior bond, and takes credit on the account for money paid out under the new bond, the credits will first be applied to the balance due under the old bond though this result in charging the sureties on the new bond with money lost or embezzled be- fore their bond was given. Egremont v. Benjamin, 125 Mass., 15; Sandwich v. Fish, 2 Gray, 298; Chapman v. Com., 25 Gratt. (Va.), 721; Readfield v. Shaver, 50 Me., 36.

The sureties of a county treasurer are liable for his failure to perform the duties of his office, though the Commissioners Court command, en- courage, acquiesce, or otherwise take part in his .wrongdoing. McKin- ney v. Robinson, 84 Texas, 489; Britton v. Fort Worth, 78 Texas, 227; Finch v. State, 71 Texas, 52; Loyd v. Fort Worth, 82 Texas, 249; Hal- lettsville v. Long, 32 S. W. Rep., 567; Hart v. U. S., 95 U. S., 316; Minturn v. U. S., 106 U. S., 437; Waseca County v. Sheehan, 42 Minn., 57; Manley v. Atchison, 9 Kans., 358.

BROWN, ASSOCIATE JUSTICE.—Thomas F. Nash, County Judge of Dallas County, Texas, instituted this suit, for the use of that county, against W. N. Coe, County Treasurer of the said county, and B. Blank- enship, Henry Exall, T. G. Wood, Jr., F. L. Ervine, W. H. Prather, J. J. Carter, Thomas Field, S. B. Hopkins, R. B. Godley, Chapman Brad- ford, E. G. Knight and J. B. Oldham, as sureties on his first bond, and against P. J. Butler, H. C. Clark, F. M. Cockrell, H. H. Smith and C. B. Gillespie, as sureties on his second bond. The object of the suit was to recover from Coe and his sureties thirteen thousand dollars of the county's money which, it was alleged, Coe had on hand on June 30, 1891, and that afterwards during his term of office he converted it to his own use and failed to pay it over to himself as his successor in office. And it is also alleged that he did not render a true account thereof to the Commissioners Court of the county, nor safely keep nor faithfully disburse the said thirteen thousand dollars according to law, by reason whereof the County of Dallas was deprived of the money, withi nterest from the 30th day of June, 1891.

Plaintiff alleged also that on the 13th day of August, 1891, and at divers times thereafter (specially stated in the petition, but not neces- sary to be enumerated herein) the said W. N. Coe, as treasurer of that county, rendered to the Commissioners Court of Dallas County an ac- count, purporting to be a detailed report of all moneys received and dis- bursed by him and of all other proceedings in his office during the quarter ending at the date stated in each allegation, which, for the pur- poses of this opinion, is not necessary to be particularly stated; that in each of the said reports he showed that he had an amount of money on hand greater than the sum of thirteen thousand dollars claimed from him and his sureties by the county; that the Commissioners Court ex-

amined his said reports, receipts and disbursements, stated and found them correct, and, relying upon said reports, the Commissioners Court caused an order to be entered upon its minutes approving the said reports. It is alleged that during his whole term of office Coe concealed from the said Commissioners Court the loss of thirteen thousand dollars, and failed and neglected to report the same to the Commissioners Court of the said county, and made false and fraudulent reports as aforesaid, and during all of said term wholly failed and neglected to direct prosecution according to law for the recovery of said thirteen thousand dollars from himself and the sureties on his bonds; that when the loss of said money was discovered Coe and the sureties on his original bond were, and ever since have been, insolvent; that when the accounts were rendered Coe and the sureties on his original bonds were solvent and had property out of which the county could have indemnified itself if the court had known or been informed of the loss of said thirteen thousand dollars.

The sureties on the additional bond hereinafter mentioned, after a general demurrer, filed special exceptions, and then answered by general denial and by pleading specially, (1) a misjoinder of actions and parties; (2) that the loss of the money sued for occurred prior to the execution of the bond upon which they are sureties; (3) that at the time and prior to the execution of the bond by them, it was known to the Commissioners Court that the Ninth National Bank, in which the money sued for was deposited, was in a failing condition, and that said money had been lost by failure of said bank; (4) that when they executed the additional bond and when it was approved, they knew of said loss and signed the bond with the distinct understanding that they were not and could not be held liable therefor, and that by its terms they were only bound for the future acts of Coe as treasurer of the said county; and (5) that if Coe made any false and fraudulent reports, as charged by plaintiff, they nor either of them had knowledge of the same; that each report made by Coe was the only one he could make in law showing cash and funds with which he was chargeable as treasurer of said county, and that when each and all of said reports were made it was known to the Commissioners Court that by the failure of the Ninth National Bank of Dallas, on or about the 15th day of June, 1891, there had been a loss to the county of its funds deposited therein, which had not been recovered, and there was no concealment by the defendants of these facts from the Commissioners Court.

The exceptions was overruled. The case went to trial before a jury, and the presiding judge instructed the jury to return a verdict in favor of the plaintiff against Coe and his sureties on both bonds for thirteen thousand dollars, with interest at six per cent per annum for two years, eleven months and twenty-one days; the jury returned a verdict in accordance with the direction of the court, upon which judgment was rendered, which was affirmed by the Court of Civil Appeals:

From the conclusions of fact found by the Court of Civil Appeals,

we make the following statement as pertinent to the issue presented before us:

W. N. Coe was elected County Treasurer of Dallas County on the 4th day of November, 1890, and qualified by executing a bond, payable and conditioned as the law required, in the sum of $250,000, with B. Blankenship, Henry Exall, T. G. Wood, Jr., F. L. Ervine, W. H. Prather, J. J. Carter, Thomas Field, S. B. Hopkins, R. B. Godley, Chapman Bradford, E. G. Knight and J. B. Oldham as his sureties thereon, which was duly approved by the County Court, and W. N. Coe entered upon the discharge of his duty as County Treasurer for the said county.

On the 29th day of June, 1891, the County Commissioners Court of Dallas County made an order requiring W. N. Coe, County Treasurer, to give an additional bond in the sum of $100,000, with good and sufficient sureties, and conditioned as the law required; and in pursuance of this order, on June 30, 1891, W. N. Coe, as principal, and P. J. Butler, H. C. Clark, F. M. Cockrell, H. H. Smith and C. B. Gillespie, as sureties, executed a bond in the sum of $100,000, payable to the County Judge of the county and conditioned that W. N. Coe, County Treasurer, should well and truly perform and discharge all the duties required of him by law as County Treasurer of Dallas County and pay over, according to law, all moneys which came into his hands as County Treasurer, and render a just and true account thereof to the Commissioners Court at each regular term of the said court, which bond was approved on the 30th day of June, 1891.

Coe's official report to the Commissioners Court made for the quarter ending April 30, 1891; showed a balance on hand of $123,311.73, which report was approved and recorded in the minutes of the court, being the last report made before the additional bond was given.

On August 13, 1891, Coe filed his report for the quarter ending July 31, 1891, which closed in these words: "Balance on hand July 31, 1891, $76,329.16."

Coe made his reports officially at the end of the quarter, as follows: October 31, 1891, April 30, 1892, July 31, 1892, October 31, 1892, and December 8, 1892—in each of which reports he showed a balance on hand exceeding the amount sued for. Each of the reports was approved by the Commissioners Court and spread upon the minutes of that court. The balance on hand at the end of each quarter was in fact $20,000 less than stated in the reports filed after the additional bond was given.

In 1892 Coe was elected for a second term, and in his report of December 8, 1892—the last of his first term—he stated that the balance on hand December 8, 1892, was $28,900.32, when it was, in fact, only $11,900.32—the remaining $17,000 being represented by a certificate of deposit in the Ninth National Bank, which was insolvent; but of this amount $4000 was replaced in the treasury before suit was brought.

On November 24, 1890, Coe deposited $20,000 of county funds in the Ninth National Bank of Dallas, which closed its doors, and the examiner took charge of it, on June 30, 1891—the date on which the addi-

tional bond was given. The bank had, however, several days prior thereto suspended payment and refused to honor a check of Coe's drawn on it for $5000 of the county's money in its deposit.

The sureties on the additional bond knew when they signed it that the money had been deposited in and had never been drawn from the bank and that the bank was in a failing condition.

After giving the additional bond Coe carried the certificate of deposit as cash in the treasury, reporting as balance on hand the amount which ought to have been on hand.

E. G. Bower was County Judge of Dallas County during W. N. Coe's first term, and was succeeded by Thomas F. Nash, the appellee, in December, 1892, who succeeded himself and is the present County Judge of Dallas County.

With the exception of W. H. Prather, all of the sureties on Coe's first bond were insolvent after his first term of office expired, most of them becoming so after the execution of the additional bond. All of the sureties on the second bond knew when they signed it of the deposit of the $20,000 in the Ninth National Bank and of its insolvency at the time. These sureties personally had nothing to do with the making of Coe's reports in 1891 and 1892 or presenting them to the Commissioners Court, nor did they have actual knowledge of the reports, nor do anything to secure their approval.

Upon the issue as to whether the commissioners knew of the falsity of the reports there was evidence pro and con, but the Court of Civil Appeals made no finding of fact upon that issue, deeming it immaterial, in the view that court took of the case.

The Court of Civil Appeals made no finding of fact as to the time the Ninth National Bank of Dallas failed, nor whether the money claimed from the defendants was deposited in that bank, but the evidence is sufficient to establish that Coe, as County Treasurer of Dallas County, had $20,000 of the county's funds deposited in said bank, and that it failed and the money was lost before the additional bond was given by Coe.

Anne E. Prather, one of the defendants in the court below, and one of the appellants in the Court of Civil Appeals, filed a motion in this court to dismiss the writ of error because W. N. Coe, the principal, and she, Anne E. Prather, and others who were sureties upon the first bond of W. N. Coe were not made parties to this writ. All of the parties named except Anne E. Prather filed acceptance of service in this court.

Article 942, Rev. Stats., so far as it is pertinent to this question, is in the following language: "Any party desiring to sue out a writ of error before the Supreme Court, shall present his petition addressed to said court, stating the nature of his case, and the grounds upon which the writ of error is prayed for, and showing that the Supreme Court has jurisdiction thereof; and the petition shall contain such other requisites as may be prescribed by the Supreme Court."

It will be seen that the statute does not require petitions to name all

the parties to the proceeding. However, it would be better that it should do so, to guide the clerk in issuing the citation. At a former day of this term, we overruled a motion of a similar character without written opinion, but we have concluded that it is better briefly to state the grounds for our action upon this motion. The failure to name the parties in the petition is of no consequence if they had been cited according to law, because it is not a requisite of the statute, and the filing of the petition in compliance with the statute has the effect to remove the cause to this court when the writ is granted. The parties not named having accepted service, and Anne E. Prather having appeared, the whole object of the law is accomplished, which is, to bring the parties by proper notice before the court. The motion to dismiss is therefore overruled.

Mrs. Prather also filed a motion to set aside the submission of this cause for the reason that P. J. Butler, one of the plaintiffs in error, died prior to the filing of the petition for writ of error in the Court of Civil Appeals, but after the appeal to that court had been perfected. Article 973, Rev. Stats., reads thus:

"If any party to the record in any cause now pending in, or hereafter taken to the Supreme Court or Court of Civil Appeals, by appeal or writ of error, shall have died heretofore, or shall hereafter die, after the appeal bond has been filed and approved, or after the writ of error has been served, and before such cause has been decided by the Supreme Court or Court of Civil Appeals, such cause shall not abate by such death, but the court shall proceed to adjudicate such cause and render judgment therein as if all the parties thereto were living, and such judgment shall have the same force and effect as if rendered in the life time of all the parties thereto."

The appeal to the court of Civil Appeals having been perfected in the life time of Butler, his death does not affect the proceedings thereafter in that court, or in this. This court will proceed in the case just as if he were living. The motion to set aside the submission is overruled.

The defendant in error seeks to maintain the judgment against the plaintiffs in error upon three grounds: (1) that the bond sued upon secures the county against defaults which occurred prior to its execution; (2) that the principal, Coe, having made reports to the Commissioners Court subsequent to the giving of the bond sued upon, in which he showed a balance in his hands which would cover the amount claimed of the sureties, those reports are conclusive upon the sureties to show that Coe had the money in his hands after the bond was given; (3) that Coe made false reports to the Commissioners Court of Dallas County, in which he showed a balance on hand sufficient to cover the sum sued for, when, in fact, it was not on hand, and thus misled the Commissioners Court; and the bondsmen upon his first bond having become insolvent, the sureties on the additional bond would be held liable on account of the false reports thus made.

The bond in question in this case was executed as an additional bond

to one which had been previously executed by Coe, the County Treasurer. The conditions of the bond are prescribed by the following articles of the Revised Statutes:

"Art. 920. The county treasurer, before entering upon the duties of his office, and within twenty days after he has received his certificate of election, shall take the oath of office prescribed by the Constitution of this State, and shall give a bond payable to the County Judge of his county, with at least two good and sufficient sureties, to be approved by the Commissioners Court, in such sum as such court may deem necessary, conditioned that such treasurer shall faithfully execute the duties of his office and pay over according to law, all moneys which shall come into his hands as county treasurer, and render a just and true account thereof to said court at each regular term of said court, which oath and bond shall be filed and recorded in the office of the Clerk of the County Court of such county and safely preserved.

"Art. 922. It shall be the duty of the County Commissioners Court whenever they may consider the bonds, or either of the bonds, of a county treasurer, from any cause, insufficient or doubtful, to require such treasurer to give another bond or bonds or to give additional bond or bonds."

The language of the bond conforms to that of the statute, which is prospective, and contains no words which would justify an interpretation that would give it a retrospective effect. In order to place such a construction upon the language used in the bond, it would be necessary to disregard the plain terms of the law and of the contract itself. A surety's undertaking will not be extended beyond the plain import of its language, unless the law under which it is entered into ascribes to it a more extended meaning. Murfree on Official Bonds, sec. 710.

In the case of Farrar v. United States, 5 Pet., 373, in which it was sought to hold the sureties on an official bond liable for money which had been misappropriated by the principal before the bond was executed, the Supreme Court of the United States said: "If intended to cover past dereliction, the bond should have been made retrospective in its language. The sureties have not undertaken against past misconduct. They ought, therefore, to have been let into proof of the actual state of facts so vitally important to their defense; and whether paid away in violation, or in execution of a trust imposed in him, if paid away, he no longer stood in the relation of bailee." This language was quoted and approved by the same court in the case of United States v. Boyd, 15 Pet., 187.

We think that it is well settled by authorities in this State, as well as outside of it, that the additional bond given by Coe did not bind his sureties for the funds of the county which had been lost prior to the execution of that bond. Arbuckle v. State, 81 Texas, 193; Cole v. Crawford, 69 Texas, 124; Barry v. Screwmans Ass'n., 67 Texas, 255; Hetten v. Lane, 43 Texas, 279.

The evidence was sufficient to justify the jury in finding that the

money claimed in this action had been lost by the County Treasurer before the bond was executed, and the District Judge erred in charging the jury to find for the plaintiff against the sureties.

The official reports of the treasurer, W. N. Coe, of matters which the law required him to embrace in such reports would be prima facie evidence against his sureties of the truth of facts stated therein; but statements made by him in such reports, of matters not required by law to be embraced therein, can have no binding force as to the sureties. Broad v. City of Paris, 66 Texas, 119; Arbuckle v. State, 81 Texas, 193; Barry v. Screwmans Ass'n, 67 Texas, 255. The reports made by Coe, which are relied upon by the defendant in error, were made after the additional bond was given, and contained the statement that a balance (a sum stated) remained on hand at the end of each quarter, which, if true, would be sufficient to include the money now claimed from the sureties upon that bond. As will be seen hereafter, the law did not require Coe to make such a statement in his reports, and although they might be evidence against him his sureties could not be bound by such unofficial statements; they were not even prima facie evidence against the sureties in this case.

The character of the report to be made by the county treasurer to the Commissioners' Court at the end of each quarter, and the duty of that court with reference to such reports, are prescribed by the two following articles of the Revised Statutes:

"Art. 928. The county treasurer shall render a detailed report at every regular term of the Commissioners Court of his county of all the moneys received and disbursed by him, of all debts due to and from his county, and all other proceedings in his office, and shall exhibit to said court at every such term all his books and accounts for their inspection and all vouchers relating to the same, to be audited and allowed."

"Art. 867. When the Commissioners Court has compared and examined a report of the treasurer and found the sum (same) correct, it shall cause an order to be entered upon the minutes of the court, stating the approval thereof, which order shall recite separately the amount received and paid out of each fund by the treasurer, and the balance of such fund, if any, remaining in the treasurer's hands, and shall cause the proper credits to be made in the accounts of the treasurer in accordance with said order."

By article 928, the treasurer is required to give a detailed statement of the sums received and paid out by him since the last report, but he is not required to state what sum of money remains on hand at that time; that duty is imposed upon the Commissioners Court by article 867. The two articles of the statute, taken together, show that it was the policy of the Legislature in enacting them, to require the county treasurer, at the end of each three months, to lay before the Commissioners Court all of the transactions of his office since the last report, in order to furnish the means for discharging the duty prescribed by article 867. which requires of the Commissioners Court to compare the report as well

as examine it, and upon such comparison and the examination, if it be found correct, to enter an order showing how much of each fund the treasurer had received, and how much he had paid out since the last order of the court, and also to show the balance of such fund, if any, remaining in the hands of the treasurer. If it was intended that the Commissioners Court should simply examine the reports of the treasurer, and state the balances as they appeared from such reports, then the statute very carefully prescribed for that court the performance of an act which was merely ministerial in its character, and required nothing more than the application of the simple rules of addition and subtraction to arrive at the conclusion to be stated upon the minutes. We do not think that it can be reasonably contended that the Legislature intended that the Commissioners Court should content itself with making such a statement of balances arrived at by mathematical calculation, but that the intention was that the court should examine into the condition of the funds in the treasury, and that it should state in its order, the sum belonging to each fund which was actually on hand or in the hands of the treasurer at that time, and that it is the duty of the Commissioners Court at the end of each quarter, by the examination, that is, counting the money, if necessary, to ascertain the balance in the hands of the treasurer, and thus practically to make a settlement with him at the end of each quarter.

The statement which Coe made of the balance on hand was not required to be so made by him, and although the statement may have been false, yet it was not a breach of the bond sued upon; the conditions of the bond prescribed by the statute were that he should render a just and true account of the funds which "shall come" into his hands, which means that he should render such account as the law required of him as county treasurer. The false statement contained in the report of Coe as to the balance on hand, gave no right of action against the sureties on his bond.

That there may be no misunderstanding of the scope of this opinion, we add that it is not intended to intimate that the failure of the Commissioners Court to perform its duties as prescribed by the statute would in any way affect the liabilities of the sureties upon the bond of the County Treasurer.

It is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, and the cause be remanded to the District Court for further trial.

*Reversed and remanded.*