WILLIAM E. WARD, ADMINISTRATOR, V. MARYLAND CASUALTY COMPANY.

No. 7946. Decided November 4, 1942.
Rehearing overruled December 16, 1942.
(166 S. W., 2d Series, 117.)

*Joseph G. Bennis,* of El Paso, for petitioner.

The Court of Civil Appeals erred in holding that respondent, as the surety on the second bond of the former administrator, was not liable to the petitioner, as administrator de bonis non, for the total sum of the defalcation of the former administrator with interest. Ellyson v. Lord, 124 Iowa 125, 99 N. W. 584; Scofield v. Churchill, 75 N. Y. 565; Lacoste v. Splivalo, 64 Calif. 35, 30 Pac. 571; Sargent v. Wallis, 67 Texas 483, 3 S. W. 721.

*Kemp, Smith, Goggan & White,* of El Paso, for respondent.

All the defalcations having taken place prior to the execution of the second bond, respondent is not liable thereon. American Surety Co. v. Norton, 238 S. W. 1111; Hetten v. Lane, 43 Texas 279; 7 Tex. Jur. 91; 21 Tex. Jur. 394.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

Petitioner, William E. Ward, as administrator de bonis non of the Estate of Mrs. P. A. Hoehne, deceased, brought this suit against Harold M. Hankamer, former administrator of said estate, and his surety, Maryland Casualty Co., respondent, to recover money belonging to the estate which was misappropriated by Hankamer while serving as administrator.

Hankamer first qualified as administrator on November 29, 1933, when his bond in the principal sum of $3,800 with respondent as surety was approved by the County Judge of El Paso County. His first annual account, filed January 5, 1935, showed that after deducting proper expense items, he had on hand belonging to the estate $4,358.88 and certain items of jewelry which do not figure in this case. His second account filed June 1, 1936, showed he had on hand $4,483.32. His third account filed January 28, 1938, showed cash on hand to the amount of $4,465.26. Each of these annual accounts was in due course approved by the probate court.

On October 10, 1939, Hankamer filed his fourth annual account, in which he charged himself with a cash balance of $4,413.51. On October 26, the probate judge approved this account but required Hankamer to file a new bond in the principal sum of $9,000.00. On November 7 this new bond was filed with respondent as surety, and the same was approved on November 29, 1939.

On October 8, 1940, Hankamer was removed as administrator by the probate court on the ground that he had "heretofore misapplied and embezzled the property of said Estate, to-wit, the sum of Four Thousand Four Hundred Thirteen Dollars and Fifty-One Cents ($4,413.51)". On November 9, 1940, petitioner was appointed to succeed Hankamer and on the 14th day of that month made written demand of Hankamer that he deliver the $4,413.51, and whatever other property of the estate that Hankamer might have in possession. Hankamer failed to respond. On December 14, 1940, petitioner made demand upon respondent as surety on the two bonds of Hankamer for payment of the moneys and property of the estate so misapplied and unaccounted for by him with interest thereon at the rate of 10 per cent per annum from date of the defalcations. On February 5, 1941, respondent tendered to petitioner, as administrator, the sum of $3,800.00 with interest thereon at the rate of 6 per cnt per annum from December 14, 1940, to February 5, 1941, in full discharge of its liability on said bonds. Petitioner refused this tender because of its alleged insufficiency but respondent has kept it continuously good since. On February 8, 1941, the probate court ordered Ward to bring this suit.

It was agreed between the parties that due to failure of Hankamer to take credit for some small commissions then due him the correct amount due by him to the estate when he filed

his annual account on October 10, 1939, was $4,346.96 rather than $4,413.51.

Hankamer kept no bank account in the name of the estate but deposited all its moneys to the credit of his personal account in an El Paso bank and disbursed it through his own personal checks.

The parties agreed that Hankamer had misappropriated all the moneys sued for prior to the filing of the $9,000.00 bond sued on herein; that the misappropriations occurred as follows: $2,838.34 on or before January 1, 1935, and $1,508.62 on or before June 30, 1936.

The trial court rendered judgment against respondent for $3,800.00, the amount of the first bond, with interest at 10 per cent per annum from June 30, 1936, to date of judgment and 6 per cent per annum on the amount of the judgment from its date until paid. The Court of Civil Appeals reformed the judgment so as to make it conform to respondent's tender, that is, $3,800.00 with interest from December 14, 1940, to February 5, 1941, at 6 per cent per annum.

Ward's application here presents three propositions for decision, namely, .(1) whether respondent is liable on its second bond for defalcations admittedly occurring before it was filed; (2) whether interest is to be computed from the date of the defalcations or from the date of demand; and (3) whether interest is to be fixed at 6 per cent or at 10 per cent per annum.

■ The first proposition seems settled by Sargent v. Wallis, 67 .Texas 483, 3 S. W. 721. In that case Cherry borrowed from his wife, then guardian of a minor's estate, certain United States bonds for which he agreed to pay some thirteen years later. These bonds he then hypothecated to secure a debt he owed. Subsequently he qualified as guardian of the estate. Then, his debt not being paid, his creditor sold the bonds Cherry had borrowed from his wife while she was guardian. Thereafter Cherry was required to file a new bond as guardian, which he did with Sargent and others as sureties. Two years later Cherry was removed as guardian and Wallis was appointed. From the time of his appointment and in all his reports Cherry charged himself with the face value of the bonds as so much money in hand, but he never had any such money nor did he ever regain possession of the bonds.

Wallis sued Cherry and the sureties on the second bond for the value of the bonds, basing his case on two theories, either that Cherry was at all times a debtor to his minor ward or had breached his duty to recover the bonds. Justice Stayton says Cherry was liable on both theories and, as to his status as debtor, says, "If we regard the guardian as having been a debtor to his ward's estate, on account of what transpired before his appointment, the position of himself and sureties would be no better. If a person appointed executor, administrator or guardian be a debtor admittedly, at the time of his appointment, to the estate of which he is made the representative, having voluntarily assumed the trust, and his sureties having obligated themselves that he will faithfully execute it, and thus prevented the appointment of any other person, and being unable to sue himself, he must, in legal contemplation, be considered to have paid the debt to himself and to *continuously hold the money, so long as his representative character continues, and his sureties, as well as himself, therefore liable for it.* * * * The indebtedness of the guardian would be assets, for which, as other assets, he and his sureties must account. The rule that sureties are not liable for the misappropriation of assets made before they became sureties, is not applicable in this case; for the duty violated—whether it consist in failure to recover the bonds or to account for assets, *if the guardian be deemed to have been a debtor, and therefore to hold for his ward a sum of money equal to his indebtedness—is one continuous in character.*" (Italics ours.)

We see no distinction between the principle underlying the case just cited and that governing the case at bar. Hankamer, whether he had the money on hand or not, admittedly was properly chargeable with $4,346.96 belonging to the estate. He owed it that much money, and he owed it in his fiduciary capacity. He admitted it in every account he filed, including the one filed on October 10, 1939, which caused the probate court to require the $9,000 bond sued on. He was under a continuing duty, as a fiduciary, to turn it over to whomever he might be directed whenever so ordered by the probate court. The fact that he had long since misapplied and converted it to his own purposes could neither alter nor diminish that duty. 24 C. J., sec. 2533, p. 1059. He owed the duty when the second bond was filed and on each succeeding day thereafter. He owed it on November 14, 1940, when Ward made written demand that he deliver it over. When he failed to pay it over in response to such demand

he failed to "faithfully discharge the duties as administrator of said estate according to law" as the bond guaranteed that he would do. Baldwin et al v. Dearborn, 21 Texas, 446. Therefore, the condition of the bond was breached and respondent as surety thereon became liable to the estate for the amount he owed as admitted by him in the account he filed less than a month before respondent executed the $9,000.00 bond in question, which account surely must have been known to respondent when it undertook to underwrite his obligation with respect thereto.

It must be remembered that we are not here dealing with the principle of contribution as between sureties on the first and second bonds, as was the situation, for example, in Royal Indemnity Co. et al v. North Texas National Bank et al (Com. App.), 25 S. W. (2d) 822, wherein it is held that liability must fall on the defendant who was surety when the defalcation occurred. Nor do we have a public official's bond, as in Coe v. Nash, 91 Texas 113, 41 S. W., 473, wherein the obligation is explicitly prospective, that is, the surety undertakes that the officer-principal shall pay over according to law all moneys which *shall come* into his hands as such officer. Nor do we have a case wherein the ordinary relation of debtor and creditor exists between the administrator and the estate for money borrowed before he became administrator, as in American Surety Co. of New York v. Norton (Com. App.), 238 S. W. 1111. There it is said the administrator's duty was individual and not fiduciary; that he never became liable in his fiduciary capacity—so as to make his surety liable—unless and until he failed to exercise ordinary care to collect the money from himself. In the case at bar Hankamer did receive the money in his fiduciary capacity as administrator and did hold it for a time in his fiduciary capacity and did misapply it in his fiducary capacity and did continuously thereafter breach his duties as a fiduciary to return it.

We are aware that the decisions in Freedman v. Vallie et al, 75 S. W., 322, American Bonding Co. v. Fountain, 196 S. W., 675, and Wiseman v. Polley, 254 S. W., 1115, are apparently contrary to our conclusion here. However, they are courts of civil appeals opinions without writ of error history and we are unable to find that any one of them has ever been cited by the Supreme Court, so they are not binding on us in the face of Sargent v. Wallis, supra, and the well considered opinions of

the highest courts in other jurisdictions, notably Choate v. Arrington, 116 Mass. 552; Pintstaff v. People, 59 Ill., 148; Ellyson v. Lord et al, 124 Iowa 125, 99 N. W., 582; Smith v. Worley, 12 Ohio App., 367; Scofield v. Churchill, 72 N. Y., 565, 567; Lacoste v. Splivalo, 64 Cal. 35, 30 Pac., 571, and numerous other cases cited in the comprehensive note appearing in Anno. III, 82 A. L. R., p. 591. See, also, 24 C. J., sec. 2539, p. 1060; and 21 Am. Jur., p. 795, sec. 738, which says that a later bond "is generally regarded as security for a devastavit of the principal committed prior to the giving thereof."

■ While it seems clear that Hankamer is liable to petitioner for interest from the date the defalcations occurred, we believe a different rule must be applied to respondent. Its undertaking was that Hankamer would discharge his duty according to law—that is, that he would pay over to Ward, his successor, the moneys he admittedly was due to turn over to him. His liability was primary; its was secondary. It breached its obligation on December 14, 1940, when it failed to comply with petitioner's demand that it pay to him the $4,346,96 which its principal had therefore failed to pay, and it cannot justly be charged with interest prior to the date of its breach. Interest, when awarded as damages, is to be computed from the time of the breach, which may be from the time demand is made on the surety, or from the commencement of suit. 11 C. J. S., sec. 131, p. 511. See, also, 21 R. C. L., sec. 128, p. 1087.

3 ▪ It has been definitely settled that 10 per cent is the proper interest rate. Anderson v. Armstrong, 132 Texas, 122, 120 S. W. 2d, 444, 132 S. W. (2d) 393.

Accordingly, the judgment of the Court of Civil Appeals reforming the judgment of the trial court is reversed. The judgment of the trial court, in so far as it relates to respondent Maryland Casualty Co., is reformed so as to give petitioner, William E. Ward, judgment against said respondent for the sum of $4,346.96 with interest thereon from December 14, 1940, at the rate of 10 per cent per annum until paid; and, as reformed, the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court November 4, 1942.

Rehearing overruled Decmber 16, 1942.