**Lee SIERAD And Hartford Casualty Insurance Company, Appellants**

**v.**

**Susan BARNETT, Successor Administrator of Estate of Leon Sierad, Appellee.**

No. 05–03–00127–CV.

Court of Appeals of Texas, Dallas.

May 31, 2005.

Jeffrey Robert Sandberg, Dallas, for Appellant.

Lee Sierad, Plano, pro se.

Karen Cathey, Karen Cathey, P.C., McKinney, for Appellee.

Before Justices WRIGHT and BRIDGES.[1]

## OPINION

Opinion by Justice BRIDGES.

This case was brought by an estate administrator against the former administrator and Hartford Casualty Insurance Company, which served as the former administrator's surety. Hartford challenges the legal and factual sufficiency of the evidence to support the $180,000 damage award. In eighteen additional issues, Hartford asserts the trial court erred in 1) refusing to sign a "judgment" purportedly rendered earlier in the same proceeding, 2) refusing to enforce a purported rule 11 agreement, 3) awarding damages for the full amount of each bond, 4) taking judicial notice of the content of files in related matters in the underlying probate proceeding, 5) refusing to exclude evidence as a discovery sanction, 6) admitting lay-opinion testimony, 7) admitting hearsay evidence, and 8) admitting documents without proof of authentication. We affirm the trial court's judgment.

### Facts

Leon Sierad died intestate in June 1996, leaving two daughters, Lee Sierad and Stephanie Sierad. In July 1996, Lee was appointed temporary administrator, and in August 1997 she was appointed permanent administrator. Hartford served as Lee's surety in both capacities, posting a separate bond of $90,000 for each.

Stephanie opposed Lee's appointment as permanent administrator, filing her own

1. The Honorable Tom James, Retired, Court of Appeals, Fifth District of Texas at Dallas, was a member of the panel at the time this case was argued and submitted for decision. Due to his retirement from the Court, Justice James did not participate in the issuance of this opinion. See Tex.R.App. P. 41.1(a) & (b).

application for that post. The matter was set for hearing on May 16, 1997, but at that time, the parties agreed to a two-month delay to try to reach a settlement. The parties announced an interim agreement, which the trial court noted in its docket. Lee's attorney wrote a letter agreement, which essentially stated that Lee would remain rent-free in the home and would receive reimbursement for payments on the mortgage, and Stephanie would have possession of the Mercedes automobile and would insure it at her own expense. The attorneys for the parties signed the letter but never filed it. Some four years later, Hartford found the letter and filed it in this proceeding. It was disputed whether the parties had ever reached agreement on the terms in the letter.

Early on in her term as administrator, Lee filed a preliminary inventory showing the value of the estate as $206,345. Subsequently, Lee let the mortgage payments lapse, and eventually the lender brought a foreclosure proceeding (the "A" proceeding, commenced in November 1998). In January 2000, Stephanie filed this action (the "B" proceeding) against Lee and against Hartford as her surety. She alleged Lee had breached her fiduciary duty by failing to pay the mortgage or to pay rent on the house and failing to provide documentation to Stephanie so that she could register and insure the Mercedes. In March 2000, in the A proceeding, the court signed an order approving foreclosure on the house. In April 2000, Lee sold the house.

Thereafter Lee could not be located. On May 16, 2001, the court ordered Lee removed as permanent administrator, noting her whereabouts were unknown. Susan Barnett was named successor administrator, and Lee was ordered to turn over all estate property to Barnett. On May 25, 2001, a bench trial was held, based on Stephanie's complaints about the house and car. On June 6, 2001, the trial court filed written findings and conclusions, finding that Lee had wasted $3,607, the net proceeds from the sale of the house. Some months later, the trial court denied Hartford's motion to enter judgment on the findings and conclusions related to the proceeding on May 25.

Barnett joined as plaintiff in this proceeding. She pursued locating Lee, which she testified took about a year. After ascertaining the status of assets, Barnett amended the petition, substantially expanding the claims. Stephanie nonsuited her claim. A bench trial was held on December 6, 2002 when the court reopened the proceedings.

The trial court found that from the time Lee qualified as temporary administrator, "Lee immediately began treating the estate's property as her own," in derogation of the rights of others. The court concluded the letter was not a "binding rule 11 agreement," noting that it failed for want of consideration. Because Lee never took the action necessary to ensure Stephanie could use the Mercedes, Lee in turn lost the right to possess the house rent-free. This resulted in a loss in rentals and equity of $62,349, plus prejudgment interest of $24,176. In addition, the court found that "Lee also converted most of the decedent's personal property to her own use, and wasted most of what was left." Losses of personal property totaled $122,711, plus interest of $68, 914. Lee was also held liable for professional fees totaling $64,100. Accordingly, the trial court rendered judgment against Lee for $342,250 and against Hartford for $180,000, the combined maximum amount under the bonds.

Hartford appealed. Although Lee filed a notice of appeal, her attorney has withdrawn and no briefs have been filed on her

behalf. Therefore, we dismiss her appeal for want of prosecution. TEX.R.APP. P. 38.8(a)(1).

## I. Sufficiency of Evidence on Injury and Damages

In its eighteenth issue, Hartford argues the evidence is legally and factually insufficient to support either that Lee caused economic loss to the estate or the amount of the damages awarded.

■■■ Once assets are traced to a fiduciary, a presumption arises that those assets were in her possession and the burden shifts to the fiduciary to account for the assets. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). A fiduciary has an ongoing duty to account fully for assets within her trust. *Corpus Christi Bank and Trust v. Roberts*, 597 S.W.2d 752, 755 (Tex.1980). *See Scott v. Taylor*, 294 S.W. 227, 231 (Tex.Civ.App.-Amarillo 1927, no writ) (burden on fiduciary to show all expenditures were just, necessary and correct and to turn over remaining assets); *Garcia v. Garcia*, 878 S.W.2d 678, 680 (Tex.App.-Corpus Christi 1994, no writ) (when fiduciary fails to file proper inventories and accounts, burden on fiduciary to show validity of deductions from assets).

■■■ When we review the findings for legal sufficiency, we consider only the evidence and inferences tending to support the finding and disregard all the evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). We uphold the finding if it is supported by more than a scintilla of evidence. *Id.* When reviewing findings of fact for factual sufficiency, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We review challenges to a trial court's conclusions of law as a matter of law. *Boyd v. Diversified Fin. Sys.*, 1 S.W.3d 888, 890 (Tex.App.-Dallas 1999, no pet.).

The trial court found that Lee had wasted or converted estate assets as follows:

1. value of rentals and equity in house: $62,349; prejudgment interest: $24,176
2. value of the vehicles, $54,450
3. unauthorized withdrawals: $8,455
4. Bank of America account: $18,717
5. the Guaranty Federal Bank "estate account": $192
6. bank fees: $330
7. Home Savings account: $2,921
8. insurance claim proceeds: $2,147
9. money order: $999
10. receivables: $14,500
11. household items: $20,000
12. prejudgment interest on loss on household property: $68,914.

■■■ Bearing in mind our conclusions on the letter agreement and on evidence issues, as discussed below, we have reviewed the record evidence. Concerning the house, the record shows Lee never paid rent and quit making payments on the mortgage. The testimony of Mark Beaty, the real estate expert, and of Barnett support that the estate lost the value of rental payments (46 months at $1250 per month) and equity in the home (compared to values had Lee timely sold the home), totaling a net loss of $62,349, with prejudgment interest totaling $24,176.

Concerning lost value on the vehicles, the amount of damages was based on Lee's preliminary accounting valuing the vehicles at $65,000 and a final order approving a sale yielding cash proceeds of $7,050. The Mercedes, distributed to Stephanie, was valued at $3,500. The resulting net

loss to the estate totaling $54,450 is thus supported by the evidence.

The amount of loss on unauthorized withdrawals on Leon's business account, called the Texwood Sales account, the Bank of America account, the "estate account" at Guaranty Federal Bank, wasteful bank fees, and Home Savings account are all supported by documentary evidence or testimony, or both. The evidence supports the fact that Lee did not account for the disposition of those assets.

Documents and testimony supported that Lee never accounted for $2,147 in insurance proceeds concerning a covered loss on the house. Testimony supported that Leon had a $999 money order in his possession and that Lee did not account for it. The $14,550 in receivables was supported by evidence of a loss with respect to the Texwood Sales account ($7,500), an outstanding loan rendered uncollectible by the limitations having run, and a witness testified to the existence, shortly after Leon's death, of over $7,500 in various receivables.

Concerning the value of household furnishings, three witnesses testified, each of whom had personally seen the furniture and owned furniture of a similar kind. Each gave a value of at least $20,000. Barnett presented calculations to support prejudgment interest on the loss on personal property in the amount of $68, 914. Lee's testimony indicated she either disposed of the furnishings before moving out of the house or took them with her. When asked what happened to some of the more valuable furnishings, Lee responded that it was old and falling apart, or broken and no longer worth anything.[2]

In addition, there is evidence to support a finding that Lee's breach of her duties necessitated additional professional fees. The evidence supports as reasonable and necessary the award of $57,500 in attorney's fees for Karen Cathey, the estate's attorney during Barnett's administration. The court awarded as well an additional $10,000 in the event of this appeal.[3] Cathey testified that attorney's fees for her firm, as of eight days before trial, were $57,352, that certain expenses were not included in the fee nor were subsequent days in trial included. She further testified that this fee was reasonable and necessary. The amount of time spent in the probate proceeding was directly the result of Lee's failure to administer the estate properly. The firm extended funds for investigations to find Lee, which took about a year. Efforts to close the estate were hampered by "our inability to locate documents and assets and the necessity to file a motion to sell assets." A portion of the time was on "this litigation," which was "cumbersome," given opposing counsels' vigorous defense. She noted that more than the usual amount of time was required in the pre-trial phase and in preparing a trial brief and two supplemental briefs. The award of $1,600 in accountant's fees and Barnett's administrator's fee of $5,000 are also supported by the evidence.

2. For example, when asked what happened to the big-screen TV, she testified that it was dropped when she moved from the house and destroyed. When questioned about the master bedroom furnishings, which the other witnesses had described as very nice furniture, Lee stated it was falling apart so she gave pieces of it to charity and set the rest of it out in the alley.

3. In its findings and conclusions, the trial court found that "Barnett's reasonable and necessary attorneys fees were $57,500; and if either Lee or Hartford Casualty appeals, those fees would increase by $10,000."

In sum, we conclude there was ample evidence that, through her acts or omissions, Lee caused waste or loss in the amounts of damages awarded concerning estate assets and the professional fees. *Burroughs Wellcome,* 907 S.W.2d at 499. Further, reviewing all of the record evidence, these findings are not so contrary to the overwhelming weight of the evidence so as to be clearly wrong or unjust. *Cain,* 709 S.W.2d at 176. We resolve Hartford's eighteenth issue against it.

## II. Refusal to Adopt Findings and Conclusions from Earlier Hearing

■ In its first issue, Hartford argues in essence that the trial court erred in refusing to enter judgment after the first bench trial, asserting that the findings and conclusions from June 2001 were tantamount to the court's rendering of judgment.

■ We conclude that the trial court did not err in refusing to enter judgment on its initial conclusions in this proceeding. A trial court has the inherent authority to change or modify any interlocutory order or judgment until the judgment becomes final. *Rush v. Barrios,* 56 S.W.3d 88, 98–99 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (court may properly grant summary judgment after previous denial, without motion or prior notice so long as court has jurisdiction); *see H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 876–877 (Tex.App.-Corpus Christi 1996, writ denied). Indisputably, the trial court had jurisdiction over this proceeding, and therefore it had authority to reconsider its previous ruling. We resolve Hartford's first issue against it.

## III. Refusal to Enforce "Rule 11 Agreement"

In its seventeenth issue, Hartford complains that the trial court erred in refusing to enforce a "Rule 11" agreement, purportedly effecting a settlement between Lee and Stephanie.[4] Rule of civil procedure 11 provides that no agreement between attorneys or parties touching on a pending suit will be enforced unless 1) the agreement is in writing, signed and filed as part of the record, or 2) the agreement is made in open court and entered of record. TEX.R. CIV. P. 11; *Padilla v. LaFrance,* 907 S.W.2d 454, 459 (Tex.1995).

The trial court made findings and conclusions as follows: The agreement could have been fully credited within the probate proceeding "had Lee fulfilled certain conditions inherent in the agreement," and by not furnishing Stephanie necessary information to insure, register or otherwise maintain the car in her resident state, "Lee destroyed Stephanie's ability to use it." The trial court concluded, "Consideration for Stephanie either failed, became wanting, or both; because the contract failed, Lee lost the contractual right to possess the residence without paying rent to the estate." The court further concluded that "the agreement is not, as Lee and Hartford Casualty now contend, a binding Rule 11 agreement."

■ Hartford contends the trial court's conclusion that the agreement was not binding is not supported by the evidence. We disagree. Stephanie's attorney testi-

---

4. Whether the parties ever reached a meeting of the minds on the terms in the purported Rule 11 agreement was highly disputed. Stephanie's attorney testified that he and Lee's attorney agreed that the letter did not embody the agreed terms and that Lee's attorney agreed not to file it. Lee's attorney could not recall that conversation or the reason why he did not file the agreement. We assume *arguendo* that the parties agreed to the terms set forth in the subject document.

fied that Stephanie could not get the insurance on the Mercedes renewed without action by Lee, as administrator. He attested that he requested from Lee's attorney written documentation showing permission to use the car, to enable Stephanie to register and insure the car. No documentation was forthcoming and, consequently, Stephanie was forced to store the car and continue negotiating with Lee. This is more than a scintilla of evidence to support the trial court's determination. Further, the evidence Hartford points to does not support our setting aside the trial court's finding as factually insufficient. Accordingly, there is both legally and factually sufficient evidence to support the trial court's refusal to enforce the purported rule 11 agreement. We resolve Hartford's seventeenth issue against it.

### IV. Liability Under Bonds

In its nineteenth issue, Hartford asserts error because of insufficient evidence of injury during both the temporary and permanent administration so that the estate suffered damages above the penal amount of the two bonds.

In determining that Hartford was liable for the maximum amount under each bond, the trial court found that Lee was never discharged from either administration and concluded, "Lee's conduct constituted a pattern of waste, conversion, and breach of fiduciary duty that began as temporary administrator and continued until she was finally removed as permanent administrator." The court added, "As a quantity, the loss only increased from the time it began until the time Lee was removed."

■■■ The liability of a temporary administrator and her surety continues until paid. *Drake v. Trinity Universal Ins. Co.*, 600 S.W.2d 768, 772 (Tex.1980). Lee, as permanent administrator, and her surety were liable for any failure to recover

from herself as previous administrator. *See Ward v. Maryland Cas. Co.*, 140 Tex. 124, 166 S.W.2d 117, 120 (1942), *impliedly overruled on other grounds, Johnson & Higgins of Tex. v. Kenneco Energy*, 962 S.W.2d 507 (Tex.1998). A surety remains liable under the bond for a temporary administrator, even though the administrator's continuation of acts causing losses to the estate occurred after the temporary administration ended. *Gulf Ins. v. Blair*, 589 S.W.2d 786, 787–88 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.).

■■ Lee's fiduciary duty as administrator required her to account fully for the estate's assets and timely close the estate. Once Barnett traced an asset to Lee's hands and showed the amount of loss, the burden was on Lee to account for any claims or expenses as reasonable and necessary or to otherwise account for the loss, or loss of value, in the assets. *See Buller*, 806 S.W.2d at 226; *Roberts*, 597 S.W.2d at 755; *Scott*, 294 S.W. at 231. She failed to meet that burden in either her role as temporary administrator or as permanent administrator. She also failed, in the latter role, to recover assets from herself as previous administrator. Accordingly, the trial court did not err in concluding that Hartford was liable for $90,000 on each bond. We resolve Hartford's nineteenth issue against it.

### V. Judicial Notice of Related Court Files

In its second and third issues, Hartford argues that the trial court erred in taking judicial notice of Hartford's two bonds covering Lee. Hartford argues that Barnett failed to meet her burden of producing the two bonds, and thus there was no evidence of a written surety contract nor was there evidence of what obligations Hartford might have under such a contract.

"It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties." *Gardner v. Martin,* 162 Tex. 156, 158, 345 S.W.2d 274, 276 (1961). A court may take judicial notice, whether requested or not. TEX.R. EVID. 201(c). The trial court need not announce it is taking judicial notice. *Dutton v. Dutton,* 18 S.W.3d 849, 856 (Tex. App.-Eastland 2000, pet. denied). The court may be presumed to have taken notice of its own files. *Harper v. Killion,* 162 Tex. 481, 485, 348 S.W.2d 521, 523 (1961).

The trial court took judicial notice of "all court papers on file" to the extent permitted by law. The record includes the two bonds as part of the probate proceeding. Thus they were part of the evidence judicially noticed by the trial judge in the instant proceeding. We resolve Hartford's second and third issues against it.

## VI. Refusal to Exclude Evidence as Sanction for Disclosure Deficiencies

In its sixth, eighth, fifteenth,[5] and sixteenth issues, Hartford asserts that the trial court erred in failing to exclude evidence that Hartford contends was either not disclosed before trial or untimely disclosed. Hartford complains that Barnett was late in disclosing the identity of the real-estate expert on valuation and rental value, Mark Beaty, and that Barnett failed to disclose the purported expert "report" he referred to when testifying. Hartford also asserts that Barnett failed to disclose its valuation of the estate vehicles, was late

in disclosing certain bank documents, and failed to disclose the amount of professional fees owing by the estate, including attorneys's fees for Cathey, the estate's attorney.

The decision whether to admit evidence rests within the discretion of the trial court. *E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

Under civil-procedure rule 193.6, a party who fails to supplement a discovery response in a timely manner may not introduce in evidence the untimely disclosed information unless the court finds that there was good cause or no unfair surprise or prejudice to the other party. TEX.R. CIV. P. 193.6(a). The burden of establishing this exception is on the party seeking to call the witness or introduce the evidence. *Id.* 193.6(b).

In its findings and conclusions, the trial court concluded that neither Hartford nor Lee was unfairly surprised or prejudiced by any disclosure deficiencies. The trial court found, in essence, that Lee, with Hartford's participation or acquiescence, engaged in two devices to distract Barnett from her tasks as administrator: through putting Barnett to an evidentiary hearing to sell the estate's vehicles and by placing obstacles to Barnett's discovering estate documents that Lee failed to provide. The

---

5. In its fifteenth issue, Hartford also asserted that Barnett's testimony on future accountant's fees was hearsay and that she failed to disclose she would testify as an expert on such fees. When Barnett first testified to the

accountant's fees, Hartford did not object on the bases it now asserts. Accordingly, Hartford failed to preserve these alleged errors. Tex.R.App. P. 33.1.

court's findings and conclusions, in sum, follow:

- Hartford's liability derives only from its status as Lee's surety, thus Lee's defenses are Hartford's defenses; Hartford did not seek indemnity from Lee.

- Lee objected to Barnett's application to sell estate vehicles, necessitating an evidentiary hearing in November, the month before trial in this cause. Hartford was present and acquiesced in Lee's objection. The court concluded the objection was frivolous, oppressive, and harassing.

- It was in Hartford's interest that Barnett be blocked from selling the vehicles. Unable to sell, Barnett would need to distribute the assets to heirs, and the loss in value in the assets would be the heir's loss, "rather than Lee's and Hartford Casualty's loss associated with Lee's disastrous performance as administrator."

- All the evidence Lee and Hartford contended should have been excluded pertained to information about the estate's assets and their value—which property Lee once controlled.

- Lee did not comply with an order to turn over estate property and records.

- Barnett was put to both a show-cause process and discovery to obtain administrative information from Lee.

- Barnett sought relevant bank account records from Lee, and Lee's attorney agreed to expedite discovery, but reneged, and both Lee and Hartford resisted Barnett's effort to subpoena the same records from the banks; the court concluded the "unjustified breach" by Lee of the discovery agreement, reinforced by Hartford, was frivolous, oppressive, and harassing.

- Barnett's late disclosure of evidence was a result of the above-noted distractions.

- Lee and Hartford were not unfairly surprised or prejudiced by production that occurred within thirty days.

Hartford complains the trial court erred in admitting Beaty's expert testimony on valuation of the house because (1) Barnett did not disclose the real-estate expert within sixty days before trial, and (2) Barnett first disclosed at trial the report Beaty used in testifying and the fact that his wife had helped prepare the appraisal.

On these issues, the trial court specifically found as follows:

- Barnett disclosed Beaty, the real estate expert, after sixty, but within thirty days of trial, disclosing his mental impressions and opinions as well as a summary of the basis for his expert opinion; Barnett disclosed that certain items were available for inspection and copying.

- Neither Lee nor Hartford paid any attention to any such items offered for inspection, including any appraisal, although Hartford's counsel acknowledged, three days before trial, that he knew the items were still available for inspection; rather Hartford and Lee intentionally bypassed their opportunity to discover what was necessary to be ready for trial.

One court has held that a trial court did not abuse its discretion in allowing expert testimony, even though some disclosure was untimely and the testifying expert referred to an undisclosed "consulting expert" at trial. *Birnbaum v. Alliance of American Insurers*, 994 S.W.2d 766 (Tex. App.-Austin 1999), *disapproved on other grounds, In re Bass*, 113 S.W.3d 735 (Tex. 2003). The *Birnbaum* court noted that the answers to interrogatories, though inadequate, did disclose the subject of the

expert's testimony, and the expert was made available but the complaining party did not take a deposition. The court determined that, from this record, the trial court could have reasonably concluded the appellant had adequate opportunity to learn the opinions of the expert.

As in *Birnbaum,* the trial court concluded that Hartford was not unfairly surprised or prejudiced by deficiencies in disclosure concerning Beaty or the personnel who assisted in the work preparatory to his testifying. The trial court did not abuse its discretion in refusing to exclude Beaty's testimony or the document admitted as a summary of his testimony.

■■ Hartford argues that the trial court erroneously allowed Barnett to testify to the value of the estate's vehicles because Barnett failed timely to disclose that information in discovery. Documents in the probate proceeding show Lee's initial accounting valuing the vehicles at $65,000 and the final order approving sale for value amounting to $10,550. Barnett advanced those same values in this proceeding. Hartford does not challenge the trial court's finding that it was present at the evidentiary hearing on Lee's objection to Barnett's selling of the vehicles. We conclude the trial court had ample evidence to support its conclusion that Hartford was not unfairly surprised or prejudiced by admission of evidence of the same vehicle values used in the probate proceeding. The trial court did not abuse its discretion in refusing to exclude this evidence.

■■ Hartford also complains that the trial court erred in admitting documents from Guaranty Bank and Bank of America, because Barnett did not disclose those until shortly before trial. We note the trial court found that Hartford joined in Lee's efforts to resist Barnett's efforts to obtain the documents directly from the banks.

Thus, the record supports a finding of lack of unfair surprise or prejudice. We conclude the trial court did not abuse its discretion in refusing to exclude the bank documents based on untimely disclosure. Tex.R. Civ. P. 193.6(b); *Downer,* 701 S.W.2d at 241–42 (evidentiary ruling upheld if any legitimate basis exists for it).

The trial court awarded a total of $64,100 in professional fees, including attorney's fees of $57,500, accountant fees of $1,600, and $5,000 as Barnett's administrator's fee. Hartford argues the trial court erred in not excluding testimony of the estate's attorney, Karen Cathey.

Barnett's discovery response, dated November 4, stated that administrative expenses of no less than $30,000 would be incurred to resolve accounting issues and "to pursue the claims set forth in this litigation." The response also stated there was "a minimum of $54,000 payable to third parties for administrative expenses and estate obligations." We conclude that the trial court could have concluded that Hartford was not unfairly surprised by the amount of fees, including attorney's fees, that Barnett claimed as administrative expenses the estate owed. We resolve the discovery aspects of Hartford's sixth, eighth, fifteenth, and sixteenth issues against it.

## VII. Lay–Opinion Testimony

■■ In its fifth issue, Hartford challenges the lay testimony admitted to establish that the household furnishings were worth at least $20,000. At trial Hartford objected to each of the three witnesses on the basis that they were not experts.

■■ Rule of evidence 701 permits a lay-witness opinion if the witness bases his opinion on his perception and if his opinion helps in determining a fact in issue. Tex.R. Evid. 701. Lay witnesses can give

opinions on damages as long as they testify about matters within their knowledge. *Coker v. Burghardt,* 833 S.W.2d 306, 309 (Tex.App.-Dallas 1992, writ denied). A lay witness can testify about value if he has personal knowledge of facts forming the opinion, a rational connection exists between the facts and opinion, and the opinion is helpful. *Laprade v. Laprade,* 784 S.W.2d 490, 492 (Tex.App.Fort Worth 1990, writ denied). *See Star Houston, Inc. v. Kundak,* 843 S.W.2d 294, 299 (Tex.App.-Houston [14th Dist.] 1992, no writ) (car is so central to modern life that owner is generally capable of filtering and processing information on value).

Molly Brunken, Leon's fiancé, testified she was a frequent visitor in Leon's home, was familiar with the furnishings, and that she owned comparable furnishings. Based on an earlier professional evaluation of her own furniture and the quantity and quality of Leon's furnishings, she estimated they were worth around $20,000. Duane Aamodt, who had lived in Leon's house after his death, and Craig Tyler, Leon's best friend, each testified they owned home furnishings similar to Leon's. They estimated the value, respectively, as between $20,000 and $25,000 and between $25,000 and $30,000.

Accordingly, the record evidence establishes a basis for personal knowledge of the witnesses and a rational connection of that knowledge with the opinion. We cannot conclude that the trial court abused its discretion in admitting the opinion testimony on the value of household furnishings. *Coker,* 833 S.W.2d at 309. We resolve Hartford's fifth issue against it.

### VIII. Hearsay Objections

In its sixth, seventh, ninth, tenth, eleventh, twelfth, and thirteenth issues, Hartford objected that certain plaintiff's exhibits, and testimony based on them, were inadmissible hearsay. Barnett asserts that the challenged documents fall within the purview of the business records exception to the hearsay rule. We review below the challenged documents and testimony and determine that the trial court did not abuse its discretion in concluding that the documents and testimony were admissible.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Rule 803(6) is the "business records exception" to the hearsay rule. TEX.R. EVID. 803(6). A "business record affidavit" conforming to the requirements of rule 803(6) will suffice to render such records admissible. TEX.R. EVID. 902(10).

Rule 803(6) permits "the custodian or other qualified witness" to verify business records according to the criteria in that rule "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." TEX.R. EVID. 803(6). When one business relies on another business's records as its own and has verified for itself the accuracy of those records, such documents have been admitted so long as circumstances do not otherwise indicate a lack of trustworthiness. *See Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 112–113 (Tex.App.-Dallas 1991, no writ) (second-party business records admissible when relied on by first party to make business payment and nothing in record or circumstances concerning generation of records indicated lack of trustworthiness); *Duncan Dev. Inc. v. Haney,* 634 S.W.2d 811, 813–14 (Tex.1982) (business records can comprise records of another business if latter determines accuracy of such records).

Hartford objected to documents Barnett used to establish the loss to the estate

concerning Leon's house, which occurred during Lee's administration. Home Savings was the initial mortgage holder, succeeded by Washington Mutual. One document bearing the Home Savings logo showed the balance of the mortgage during the month of Leon's death. This document was self-authenticated as to Lee and admitted through Lee. She attested that the accounting she submitted in the probate proceeding approximated that same amount. That accounting was judicially noticed in this proceeding.

■ A number of the documents concerning the house were duplicates of evidence duly admitted in related proceedings in this case. These included Washington Mutual's verified "Authenticated Secured Claim" and its business record affidavit used to support its secured claim in the foreclosure proceeding (the A proceeding). Hartford points us to no evidence indicating the documents were inadmissible hearsay in the related proceedings.

The closing statement, generated during Lee's administration, showed that the estate netted $3,607 from the sale of the house. Barnett received the document through the former attorney for the estate, who was employed during Lee's administration. Lee was a party to the transaction represented by the closing statement,[6] and she testified that it was her signature on the document. Although in a position to question its veracity, she did not deny the accuracy of the closing statement.

Hartford also objected to admission of the statement of account from Home Savings, the mortgage company, showing a $2,921 balance in Leon's account. Barnett testified she discovered the existence of this unaccounted-for positive balance in documents related to the mortgage. These documents were faxed directly from Washington Mutual, Home Savings' successor. When Lee was asked about the account, she could not recall it specifically. When asked whether the home loan was with Home Savings, she testified, "I believe so." When asked whether she knew Leon had an account with Home Savings (used to service the mortgage), she stated "I think he did." Despite her equivocal responses, the accountings Lee filed as administrator show disbursements to "Home Savings of Am." for "mortgage payments."

Hartford also objected to admission of a copy of a check for $2,147, payable to Leon and the mortgage company, from Farmers Insurance Group. It was accompanied by an explanation showing how Farmers had derived the amount due on the claim for roof repair. Barnett testified that she received the documents through Lee's former attorney.

■ Hartford also asserts error in admitting Duane Aamodt's testimony that he saw records, shortly after Leon's death, that showed at least $10,000 in receivables. Aamodt's testimony is not hearsay to establish that records of receivables existed. The trial court did not abuse its discretion in admitting Aamodt's testimony concerning receivables of the estate that he personally saw and Lee neither produced nor explained. *See Hayes v. Bouligny,* 420 S.W.2d 800, 802 (Tex.Civ.App.-Corpus Christi 1967, no writ) (when instrument has been lost, production of original is excused; other evidence to prove contents of documents may be admitted).

---

**6.** In its fourteenth issue, Hartford complains that the trial judge found the house was sold at foreclosure. The court held that, by failing to service the mortgage, Lee "enabled" the lender to foreclosure. There was no finding that the house was sold through a public foreclosure sale. Rather, it was undisputed the house was sold through a private sale.

■ Hartford also challenged Mark Beaty's testimony as hearsay. The record shows Beaty himself testified as a real-estate expert, and he offered the values as his own opinion. Thus, this testimony was not hearsay.

■ In addition, Hartford asserted certain of Barnett's testimony was inadmissible hearsay. Barnett's testimony concerning the balance in the Bank of America account was cumulative of the lengthy exhibit consisting of bank statements, which were accompanied by the bank's business-record affidavit. Barnett's statements reiterating values on the house according to Beaty was cumulative of his testimony. Her testimony concerning the mortgage balance was established by documents in evidence, as discussed above. Accordingly, any error in admitting any testimony of Barnett that was hearsay was harmless under appellate rule 44.1. TEX. R.APP. P. 44.1. Accordingly, we resolve the hearsay aspects of Hartford's sixth, seventh, ninth, tenth, eleventh, twelfth, and thirteenth issues against it.

## IX. Authentication of Certain Evidence

■ In its fourth, ninth, tenth, eleventh, and thirteenth issues, Hartford complains that certain evidence was never authenticated, including the Home Savings/Washington Mutual documents, the closing statement, and the insurance claim form and check.

■ The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R. EVID. 901. A document may be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Id.*

901(b)(4). Under evidence rule 104(a), when authenticity is challenged, the trial court must determine preliminary questions of admissibility. TEX.R. EVID. 104(a). This determination will not be overturned absent an abuse of discretion. *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex.App.-Dallas 1991, writ denied).

We examined above, in our analysis of Hartford's hearsay issue, the circumstances concerning the origin and admission of each of the documents Hartford asserts was not authenticated. We conclude that the trial court could have concluded that the proffered documents were genuine and that the court did not abuse its discretion in admitting the challenged documents.

■ Hartford also asserted admission of the two bonds was in error because Barnett failed to authenticate them. This argument is without merit. The trial judge signed the bonds in the probate proceeding. *See* TEX. PROB.CODE ANN. § 197 (Vernon 2003) (required bonds shall be subscribed by both principals and sureties, and when approved by the court, shall be filed with the clerk). Moreover, Hartford was a signatory to the bonds and did not deny that its representative signed the bonds nor did Hartford otherwise question their genuineness. We conclude that the trial court did not abuse its discretion in overruling Hartford's objections to authenticity. We resolve the authentication aspects of Hartford's fourth, ninth, tenth, eleventh, and thirteenth issues against it.

We dismiss Lee Sierad's appeal and affirm the trial court's judgment against Hartford.