**Billy D. AKIN, et al., Appellants,**

v.

**Gladys AKIN, Appellee.**

**No. 2–82–070–CV.**

Court of Appeals of Texas,
Fort Worth.

March 3, 1983.

Wilson, Craig, Bourland & Paup, Fort Worth, for appellants.

Maurice G. Walton, Dallas, for appellee.

Before HUGHES, JORDAN and ASHWORTH, JJ.

OPINION

JORDAN, Justice.

This is an appeal from a trial court judgment that appellants herein take nothing in a declaratory judgment suit involving a claim asserted by appellants against the estate of their deceased father, W.C. Akin. The trial court, after a nonjury trial, held that a savings account in the approximate amount of $24,000.00 was the separate property of appellee, Gladys Akin, as a result of a valid parol inter vivos gift from her husband, W.C. Akin, deceased.

Appellants urged three points of error on appeal of this take nothing judgment.

We reverse and render.

W.C. Akin died intestate in Tarrant County, Texas on August 16, 1980. Shortly thereafter, appellee, Gladys Akin, the decedent's wife, was appointed community administrator of the estate of W.C. Akin, deceased. An inventory of the estate, filed January 12, 1981, which listed the community property of the decedent and his wife, did not include thereon a savings account in the amount of approximately $24,000.00 in the First National Bank of Granbury, Texas, which, after the death of W.C. Akin, was in the name of Gladys Akin. Appellee claimed ownership of the savings account as her separate property by virtue of an alleged parol inter vivos gift from the decedent on July 31, 1980 while the decedent was in the hospital in Fort Worth, Texas. The appellants, who are the heirs and beneficiaries of the decedent's community property interest, if any, in the savings account, filed a claim with the estate seeking to have one-half the decedent's community property interest in the savings account listed in the inventory of the estate. The appellants' claim was denied by the appellee community administrator. This declaratory action was filed requesting the trial court to decide the status of the $24,000.00 savings account.

Appellants' first point of error contends that the trial court erred in admitting into evidence statements of the appellee to the effect that on July 31, 1980, the decedent made a parol inter vivos gift of his one-half community interest in the $24,000.00 savings account to her. This testimony, according to appellants' first ground of error, is inadmissible under Tex.Rev.Civ.Stat. Ann. art. 3716 (1926), the statute more commonly known as the "Dead Man's Statute".

Article 3716 reads, in pertinent part:

In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, *neither party* shall be allowed to testify against the others as to any transaction with, or statement by, the ... intestate ... and the provisions ... extend to and include *all actions by* or against the heirs ... of a decedent arising out of any transaction with such decedent. [Emphasis added.]

At the trial, over objections of appellants that her testimony violated art. 3716, Gladys Akin testified that the decedent, on July 31, 1980, while in St. Joseph's Hospital in Fort Worth, Texas, at a time when he was dying of cancer, made an oral gift to her of his interest in the community bank account number 009–215–5 in the First National Bank of Granbury, Texas.

Appellee testified in part, with regard to the parol inter vivos gift, that:

"And he said, 'Honey, on your way home, stop at the bank, take that money out and put it in your own name, because the kids are going to give you trouble.' ... And I—Well, that's it, and I did what he told me."

She further testified in effect that she was not going to do as requested and put the money in her own name until she got a call from Billy Akin, one of decedent's sons, on the following day, Friday, August 1, and that after receiving such call she did then go to the bank and withdraw by means of a cashier's check the entire $24,000.00. Her exact testimony on this transaction is as follows:

"Well, at first, I wasn't going to do it [transfer the money into her own name] until I got the call, and then I went and done it, it was about four o'clock on a Friday, and I called Mrs. Erickson and

asked if she would come to the bank with me. . . . And I drew it out as a cashier's check, and I kept it until I believe it was the fifth, I was afraid I would lose it, and I redeposited it back in the bank, . . ."

She again, later in her testimony, reiterated that she wasn't going to transfer the money into her own name until Billy Akin called and "talked to me like he did."

This testimony was admitted over appellants' timely objection that it was violative of the "Dead Man's Statute" and was not competent evidence. Appellant argues that in admitting this testimony of appellee, Gladys Akin, the trial court erred, and we agree.

■ A cursory look at the above quoted portion of art. 3716 convinces us that this is a typical case involving a claim against an administrator of an estate by the heirs of the decedent and that the testimony of the administratrix, appellee, without question involved a transaction with the deceased and was therefore prohibited.

■ If a cause of action involves a transaction with the decedent and is by or against one of the specified parties in the statutes, then the statute applies and *neither party can testify. Leahy v. Timon,* 110 Tex. 73, 215 S.W. 951 (Tex.1919); *Zinn v. Farmer,* 243 S.W. 523 (Tex.Civ.App.—Fort Worth 1922, no writ); *Essex v. La Boue,* 223 S.W.2d 35 (Tex.Civ.App.—Galveston 1949, writ dism'd).

■ In this case, the plaintiffs are suing as the heirs of W.C. Akin. The classification of the property as separate or community directly affects their interest in that capacity in that estate. Any testimony by the appellee administratrix respecting transactions and/or conversations with the decedent in attempting to establish a parol gift from the decedent in the subject property (the $24,000.00 bank account) is adverse to the plaintiffs interest as heirs and therefore should have been excluded as violative of the "Dead Man's Statute". It is immaterial, for purposes of the application of the statute, that appellee was sued both in her capacity as community administratrix and individually. *Eastland v. Basey,* 196 S.W.2d 336 (Tex.Civ.App.—Austin 1946, no writ).

In *Essex v. La Boue, supra,* the heirs of a decedent sued the decedent's former wife for the return of real property which she claimed to own by virtue of a parol gift from the decedent. The defendant was sued solely in her individual capacity. All testimony by the decedent's former wife touching upon conversations or transactions with the decedent was excluded by the trial court as violative of the "Dead Man's Statute". The Court of Civil Appeals upheld the exclusion of this testimony with the comment that such ruling was "clearly correct".

Appellants first point of error is sustained.

In their third point of error appellants maintain that the evidence of the parol inter vivos gift of the decedent's community property interest in savings account number 009–215–5 was not supported by sufficient, clear and convincing testimony and that such testimony was against the weight and preponderance of the evidence required to be proved to establish such a gift.

■ The burden of proof was on the appellee to prove that a parol gift of the decedent's community one-half interest in the savings account was in fact made. Appellee in this case must meet this burden of proof in order to rebut the presumption that all property on hand at dissolution of marriage is community property. Any doubt as to the character of the property must be resolved in favor of the community. *Contreras v. Contreras,* 590 S.W.2d 218 (Tex.Civ.App.—Tyler 1979, no writ).

■ In order for there to have been a valid gift inter vivos, there must have been a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately, and fully executed by delivery of the property by the donor and an acceptance thereof by the donee. *Martin v. Martin,* 207 S.W. 188 (Tex.Civ. App.—Galveston 1918, writ ref'd); *Wells v.*

*Sansing,* 151 Tex. 36, S.W.2d 964 (Tex. 1952); *Harmon v. Schmitz,* 39 S.W.2d 587 (Tex. Comm'n App.1931, jdgmt adopted). There was no evidence showing that this was a definite gift of the decedent's community interest in a certain and definite bank account, which gift was to take effect immediately, and which was actually delivered to appellee and accepted by her. The evidence, on this point, shows in the first place that there were two bank accounts in the First National Bank of Granbury, Texas, and that appellee simply assumed the decedent was talking about the money in the savings account. Moreover, the evidence showed that at the time the gift was allegedly made by the decedent, W.C. Akin, in the hospital, shortly before his death, that appellee did not actually accept it. She testified, in effect, that she didn't want him to talk about money, since he was so ill, and that she didn't think that was the time to discuss finances. Her testimony, in part, on this matter, was:

"Well, ... I told him, I said, 'Let's wait and see how things come out,' you know, and then ... the man is sick, why talk money, I mean—I mean I thought that was trivial, I wasn't—I wasn't going to— ... Make an issue out of money ... that don't mean that much, I was more concerned for the man living."

We think the above quoted testimony clearly establishes the fact that the attempted parol inter vivos gift, if any there was, was not accepted at that time by appellee. Moreover, the testimony of appellee and Mrs. Erickson, a neighbor who was purportedly in the room with her at the time of the parol gift, is to the effect that the $24,000.00 was only withdrawn from the joint account in the Granbury bank by appellee on the following day, Friday, August 1, 1980, because of the call which appellee received from Billy Akin, son of the decedent, which angered her. Gladys Akin's testimony on this point was as follows: "Well, I thought it was trivial, I just didn't think—it would have still been in there in his name if Billy hadn't called me and embarrassed me like he did." She later testified that: "I wasn't going to [transfer the money]—I wasn't going to until he [Billy Akin] called and talked to me like he did." The neighbor, Mrs. Erickson, testified as follows:

Q. Okay. And she told you that the reason he [Billy Akin] called was because he wanted his father's half of the money?

A. Yes.

Q. Did she tell you that's what made her take the money out of the bank?

A. Yes.

Q. Did she say she wasn't going to do it otherwise?

A. She hadn't planned to do it until after he called.

This hearsay testimony was not objected to.

■ A valid inter vivos gift is not something that is open for deliberation or consideration of the donee for some future time. An inter vivos gift can have no reference to the future, but must go into immediate and absolute effect. *Martin v. Martin, supra.*

■ We further hold that there was no clear evidence of any delivery of this purported inter vivos gift. In the first place, the only evidence shows that on one day the decedent purportedly told appellee to withdraw the money and put it in her name, which evidence does not necessarily intend a gift in and of itself, and there is no evidence tending to show that the decedent intended a gift at the time Mrs. Akin actually withdrew the money from the joint account, a full one and one-half days after the alleged parol gift. Moreover, the record reveals that the decedent was never made aware, in the remaining sixteen days of his life, by appellee that the money was in fact withdrawn from the joint account. *See Hester v. Hester,* 205 S.W.2d 115 (Tex. Civ.App.—Fort Worth 1947, no writ).

Moreover, the evidence is that the decedent and his wife had two bank accounts, one checking and one savings, in the First National Bank of Granbury, Texas, and there was no testimony as to which bank account decedent meant when he told his wife to withdraw the money. Texas courts

have universally closely scrutinized alleged inter vivos gifts, especially when they first come to light after the death of the alleged donor. In *Stewart v. Tolar & Daniel,* 250 S.W. 274 (Tex.Civ.App.—Beaumont 1923, no writ), the court said this:

'He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of clear and probative force, which clearly establishes every element of a valid gift.'

\* \* \* \* \* \*

'The general rule requiring gifts inter vivos to be established by the conclusive evidence is especially applicable where such gift is not asserted until after the death of the alleged donor, and gifts thus preferred after death of the alleged donor are regarded with suspicion by the court.'

*See* also, *Martin v. Martin, supra,* at 193.

We hold that there was insufficient, clear evidence to establish in this case a valid parol inter vivos gift of the decedent's community interest in and to the savings account in the Granbury bank.

Appellants' third point of error is sustained.

 In their second point of error appellants contend that the trial court was in error in excluding certain testimony of Zetta Ann Morrow, a daughter of the decedent, alleging that the said Mrs. Morrow had validly disclaimed her interest in the estate of the decedent, thereby making her competent to testify concerning any transaction or conversation with the decedent. In view of our holding in this case, we think it unnecessary to discuss this point of error, but do point out that any error in the exclusion of this testimony was waived by appellants failure to preserve the error by including the purported testimony in the record. Since there is no showing as to what the excluded testimony would have been, this court is unable to pass upon the question of whether or not it was error to exclude the testimony. *See Allandale*

*Nursing Home, Inc. v. John Bremond Co., Inc.,* 514 S.W.2d 958 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.).

While there was testimony from Mrs. Katherine Erickson, a neighbor of the Akins in Granbury, that supported Gladys Akin's testimony that her husband did tell her to withdraw the money and put it in her name, this testimony was clearly hearsay, and, while not objected to, was not evidence and would not support the judgment of the trial court.

For all of the reasons above stated, the cause is reversed and judgment is rendered that the $24,000.00 in savings account number 012–644–1 in the First National Bank of Granbury, Texas on August 16, 1980, was a community bank account in which appellants herein are entitled to a one-half interest.

Costs of this appeal are assessed against appellee.