NO. 12-09-00274-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JAMES TRUMAN HENSLEE,                   §                      APPEAL
FROM THE

APPELLANT            

 

V.                                                                    §                      COUNTY
COURT AT LAW

 

MARY GLENDA HENSLEE,          

APPELLEE                                                   §                      ANDERSON
COUNTY, TEXAS     







MEMORANDUM
OPINION

            This
is an appeal from a decree of divorce.  In two issues, James Truman Henslee complains
the trial court erred in characterizing his separate property as community
property so that its property division divested him of his separate estate.  We
affirm.

 

Background

            Mary
and James Henslee married on August 29, 1996.  On September 24, 1996, James was
injured while performing his duties as a trainman for the Burlington Northern
and Santa Fe Railway Company.  James filed suit against the railway company
seeking damages for lost wages, diminished earning capacity, past and future physical
pain, physical impairment, and mental anguish, and past and future medical
services and care.  James settled with the railroad for $465,000.00 and
executed a release of all claims.

            James
placed the settlement proceeds in two joint tenancy accounts at A.G. Edwards. 
Prior to the marriage, James had purchased three disability policies renewable
monthly.  James also deposited the proceeds from the disability policies in the
A.G. Edwards joint accounts.  It was James’s decision to place the proceeds in
a joint account in the names of James and Mary Henslee.  Mary occasionally
wrote checks on the accounts to buy items for the house.  James did not
withdraw any of the money except to pay court approved attorney’s fees.

            Mary
filed her petition for divorce on January 17, 2003.  On September 23, 2004, the
trial court signed a Final Decree of Divorce Nunc Pro Tunc.  The court granted
James’s motion for new trial on November 18, 2004 “on the sole issue
of the characterization of the FELA settlement and, if a different
characterization is found, its effect on the property division.”

            The
court heard the case again on June 4, 2007.  On August 26, 2009, the court
signed a final decree of divorce.  The court awarded James “[o]ne-half of the
community portion of the A.G. Edwards’ accounts . . . which includes proceeds
from James Truman Henslee’s lawsuit and Trustmark policy proceeds . . . .”  The
court awarded the other one-half to Mary ($91,992.06).  The court also awarded
Mary the house, but awarded James reimbursement of $62,082.00. The court found
that $20,015.61 in the A.G. Edwards accounts was James’s separate property and
$5,265.00 was Mary’s separate property.

 

Characterization of Property

In
his first issue, James challenges the trial court’s characterization of the
proceeds of the FELA settlement as community property.  In his second issue, he
challenges the trial court’s characterization of the disability insurance
payments from Trustmark Insurance Company as community property.  The trial
court’s rulings, he argues, divest him of his separate property, an error that
requires reversal.

Standard
of Review

            The
standard of review for property division in family law cases is abuse of
discretion.  Wilson v. Wilson, 132 S.W.3d 533, 536 (Tex.
App.–Houston [1st Dist.] 2004, pet. denied).   In determining
whether the trial court abused its discretion, the reviewing court must decide
whether the trial court acted without reference to any guiding rules or
principles, so that its ruling was so arbitrary or unreasonable as to be
clearly wrong.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985); Zeptner v. Zeptner, 111 S.W.3d 727, 734
(Tex. App.–Fort Worth 2003, no pet.) (op. on reh’g).  When the standard of
review is abuse of discretion, legal and factual insufficiency are not independent
grounds of error, but are relevant factors in assessing whether the trial court
abused its discretion.  See Beaumont Bank v. Buller, 806 S.W.2d
223, 226 (Tex. 1991); Crawford v. Hope, 898 S.W.2d 937, 940 (Tex.
App.–Amarillo 1995, writ denied).  Merely because a trial court
may decide a matter within its discretion in a different manner than an
appellate court would in similar circumstances does not demonstrate an abuse of
discretion.  Downer, 701 S.W.2d at 242.  To
determine whether there has been an abuse of discretion because the evidence is
legally or factually insufficient to support the trial court’s decision, the
appellate court conducts a two part inquiry:  (1) did the trial court have
sufficient evidence upon which to exercise its discretion, and (2) did the
trial court err in the application of that discretion?  In re T.D.C.,
91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied) (op. on reh’g).

            When
the burden of proof at trial is by clear and convincing evidence, we apply a
higher standard of legal and factual review.  In re J.F.C., 96
S.W.3d 256, 265-66 (Tex. 2002).  Clear and convincing evidence is defined as
that “measure or degree of proof which will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to
be established.”  Tex. Fam. Code Ann.
§ 101.007 (Vernon Supp. 2009); Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 31 (Tex. 1994).  It is an intermediate standard between the
preponderance standard of civil proceedings and the beyond a reasonable doubt
standard in criminal trials.  In re G.M., 596 S.W.2d 846, 847
(Tex. 1980).

Applicable
Law

            Property
possessed by either spouse during or on dissolution of the marriage is presumed
to be community property, absent clear and convincing evidence to the
contrary.  Tex. Fam. Code Ann. § 3.003
(Vernon Supp. 2009).  The Texas Family Code defines separate property as that
property owned by a spouse before marriage, acquired during the marriage by
gift, devise or descent.  Id.
§ 3.001(1), (2) (Vernon Supp. 2009).  The Family Code also defines as separate
property “the recovery for personal injuries sustained by the spouse during
marriage, except any recovery for loss of earning capacity during marriage.”  Id. § 3.001(3) (Vernon 2006); see,
e.g., Perez v. Perez, 587 S.W.2d 671, 673 (Tex. 1979).  Portions of
a personal injury award belonging to the community estate include damage for
lost wages, medical expenses, and other expenses associated with injury to the
community estate.  See, e.g., Graham v. Franco, 488 S.W.2d 390,
396 (Tex. 1972); Cottone v. Cottone, 122 S.W.3d 211, 213 (Tex.
App.–Houston [1st Dist.] 2003, no pet.).  “When a spouse receives a settlement
from a lawsuit during marriage, some of which could be separate property and
some of which could be community property, it is that spouse’s burden to
demonstrate which portion of the settlement is [his] separate property.”  Licata
v. Licata, 11 S.W.3d 269, 273 (Tex. App.–Houston [14th Dist.] 1999,
pet. denied).

            The
determination of whether property is separate because owned or acquired before
marriage is governed by the inception of title doctrine.  Smith v. Smith,
22 S.W.3d 140, 145 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (op. on
reh’g).  Inception of title occurs when a party first has a right of claim to
the property by virtue of which title is finally vested.  Id.  In
order to overcome the community presumption, the burden is on the spouse
claiming certain property as separate to trace and clearly identify the
property claimed to be separate.  Estate of Hanau v. Hanau, 730
S.W.2d 663, 667 (Tex. 1987).  Separate property will retain its character
through a series of exchanges so long as the party asserting separate ownership
can overcome the presumption of community ownership by tracing the assets on
hand during the marriage back to property that, because of the time and manner
of its acquisition, is separate in character.  Cockerham v. Cockerham,
527 S.W.2d 162, 168 (Tex. 1975).  However, if separate and community property
have been commingled so as to defy resegregation and identification, the
community presumption prevails.  Hanau, 730 S.W.2d at 667.

            A
trial court may not divest a spouse of his separate property.  Eggemeyer
v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977).  It is unnecessary to
show harm, because divestiture of separate property requires reversal.  See,
e.g., Shestawy v. Shestawy, 150 S.W.3d 772, 780 (Tex. App.–San
Antonio 2004, pet. denied).

            Any
doubt as to the character of property should be resolved in favor of the
community estate.  Akin v. Akin, 649 S.W.2d 700, 703 (Tex.
Ap.–Fort Worth 1983, writ ref’d n.r.e.).

The FELA
Settlement

            In
his suit, James sought to recover damages for past and future lost wages,
diminished earning capacity, past and future physical pain, physical impairment,
and mental anguish, and past and future medical services and care.  James
settled all claims for $465,000.00.  Damages for lost wages and diminished
earning capacity are community property.  Recovery for medical expenses
incurred during marriage is community property.  Id.; Graham,
488 S.W.2d at 396.  Damages for personal injury are separate property.  Perez,
587 S.W.2d at 673.     

            James
contends the entire settlement was intended to compensate him for his personal
injury; hence it is all his separate property.  James signed several documents
in connection with the settlement.  James argues that a sentence in one of the
documents supports his contention that the entire settlement was compensation
for personal injury, and none of the money was for lost earnings or earning
capacity.  James relies on the following language in one of the settlement
documents:  “For Railroad Retirement Act purposes, I agree the entire amount of
this payment is apportioned to factors other than time lost; nevertheless, I
understand this is a final payment and complete release and includes any claim
I may have for time lost.”  At the same time he signed the release, James
signed an “Apportionment of Claim Settlement,” which recited that it was “[f]or
the purpose of the Railroad Retirement Act, Railroad Unemployment Insurance Act
and Railroad Retirement Tax Act. . . .”  It also showed that the amount of the
settlement was apportioned to “other than taxable time lost.”  The document
stated, “This apportionment and allocation is made solely for the purpose of
determining creditable earnings and computing taxes under said Acts to provide
for the reimbursement of the Railroad Retirement Board for the amount paid
employee for sickness benefits.”

            James
signed a third document entitled “Agreement Not to Mark Up/Resignation” wherein
he stated that he had agreed to

 

accept the settlement of his claims for personal
injuries, disabilities and illnesses arising out of such events and
circumstances more fully described in said Settlement and Release Agreement,
and for any and all employment claims for personal injuries, disabilities and
illnesses arising out of such events and circumstances more fully described in
said Settlement and Release Agreement, and for any and all employment claims
arising from my employment from the BURLINGTON NORTHERN AND SANTA FE RAILWAY
COMPANY.

 

 

This document
also stated, “I hereby assert and agree that said sums so paid me are based
upon representations of such permanent disability that will forever prohibit
and incapacitate me from returning to any railroad employment. . . .”  James
promised not to seek future employment with the railroads.  He also confirmed
that the agreement “includes a settlement and compromise of any and all claims
that could have been or could be brought under the Railroad Labor Act. . . .”

            We
are not persuaded that the apportionment of the settlement to factors other
than time lost establishes that it was intended solely as compensation for
personal injury and therefore separate property.  Read in their entirety, the
documents show that “time lost” refers to the special meaning the term has in
the calculation of the employee’s retirement annuity and disability eligibility
under the Railroad Retirement Act.  The sentence James relies on clearly states
that the apportionment is for “Railroad Retirement purposes” and concludes,
“Nevertheless, I understand that this a final payment and complete release and includes
any claim I may have for lost time.” (Emphasis added).  We conclude that,
as the trial court found, the allocation of the settlement “to other than ‘time
lost’ was meant only to avoid the consequences of an award for ‘time lost’
under the Railroad Retirement Act.”

            In
accepting the settlement, James released a broad range of claims including
community claims for lost employment, earning capacity, and medical expenses. 
In a separate document, he gave up any claim for future earning capacity “based
upon representations of such permanent disability that will forever prohibit
and incapacitate me from returning to any railroad employment. . . .”  The
trial court also found that the amount of the lump sum payment was
approximately the amount he would have earned as a railroad employee had he
continued with that employment from the date of the accident to the date he would
be eligible to retire with benefits.

            We
believe that part of the settlement James received was in consideration of his
release of community claims such as lost wages, diminished earning capacity,
and medical expenses.  Since the settlement included compensation for both
community and separate claims, it was James’s burden to establish, by clear and
convincing evidence, what portion of the proceeds were separate property.  See
Cottone, 122 S.W.3d at 213.  James failed to sustain his burden of
demonstrating what part of the proceeds was community and what was separate. 
Instead, he insisted that the entire sum was separate property.  Without clear
and convincing evidence establishing what part of the settlement was separate
property, the trial court correctly concluded that all of the settlement must
be presumed to be community property.  Licata, 11 S.W.3d at 273. 
Appellant’s first issue is overruled.

Disability Policy Proceeds

            James
argues that he first purchased the disability policies prior to the marriage. 
He claims that under the inception of title doctrine, the character of the
policies as separate property was fixed at the time he first executed the
insurance agreements.  Therefore, he contends that the total of $60,000 in
monthly disability payments that he received during the marriage during the
period he was unable to work is his separate property.

            In
its findings of fact made after the 2004 trial, the trial court found that “the
Trustmark policy vested after the marriage of the parties.”  It further
concluded that “the payments under the policy are community property.”

            The
court granted a new trial solely on the issue of the characterization of the
FELA settlement.  At the hearing conducted on June 4, 2007, the parties agreed
that court could take judicial notice of the testimony and exhibits in the
first trial.  However, no record of those proceedings has been brought forward
on appeal.  The limited testimony adduced at the second (2007) hearing concerns
evidence related only to the characterization of the FELA settlement.  The
monthly disability payments from Trustmark are not mentioned.  After the 2007
hearing, the court made no findings of fact related to the Trustmark proceeds.

            James’s
pleadings show that he purchased three disability policies prior to his
marriage to Mary.  But the policies state that they require renewal each month
and that the period of insurance is one month.  The maximum benefit under the
policies was twenty-four months.  All of the disability payments were paid
during the marriage and were intended to replace earnings lost while James and
Mary were married.

            “If
a person becomes disabled or injured, any disability payment or workers’
compensation payment is community property to the extent it is intended to
replace earnings lost while the disabled or injured person is married.”  Tex. Fam. Code Ann. § 3.008(b) (Vernon
2006).  The twenty-four monthly benefit payments of $2,500.00 totaling
$60,000.00 are community property.  Appellant’s second issue is overruled.

 

Disposition

            The
judgment is affirmed.

 

                                                                             Bill
Bass

                                                                                                   
Justice

 

 

 

Opinion delivered July
30, 2010.

Panel consisted of Griffith, J., Hoyle, J., and Bass,
Retired Justice, Twelfth Court of Appeals

sitting by assignment.

(PUBLISH)