**AFFIRMED and Opinion Filed May 8, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00001-CV

### JOHN MICHAEL FITZPATRICK, Appellant
### V.
### DEBORAH LYNN FITZPATRICK, Appellee

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-50901-2020**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Garcia

This is a divorce case involving John Michael Fitzpatrick ("Husband") and Deborah Lynn Fitzpatrick ("Wife"). Husband complains about the final decree of divorce (the "Decree"), arguing the trial court abused its discretion by: (i) excluding Husband's tracing expert, (ii) finding that Husband acted cruelly towards Wife and committed adultery, (iii) mischaracterizing Husband's separate property as community property, and (iv) rendering a materially unfair and unjust property division. Concluding Husband's arguments are without merit, we affirm the trial court's judgment.

## I. Background

Husband and Wife were married in 1990. In 2020, Wife filed a petition for divorce. Husband filed a counterpetition and both parties subsequently amended their pleadings.

Following a hearing, the court entered temporary orders. The case was initially set for trial on November 3, 2020, but Husband moved for a continuance. The trial court granted Husband's motion and the case was reset to Feb. 2, 2021.[1] The court's order expressly ordered that "No pretrial deadlines are extended, including but not limited to discovery deadlines."

On November 20, 2020, Husband supplemented discovery and designated an expert witness to testify about tracing Husband's separate property. Wife moved to strike the supplemental discovery, including the expert designation, as untimely.

On January 7, 2021, prior to the hearing on Wife's motion to strike, Husband's counsel moved to withdraw. The court conducted a hearing and granted the motion.

The court held a hearing on the motion to strike on January 22, 2021. Wife argued that the supplemental discovery and expert designation were untimely. Husband argued that Wife would not be surprised or prejudiced because the parties were aware that Husband had separate property. But when the judge asked Husband's counsel if Husband was unable to prove his separate property without an

---

[1] The court's order initially stated that the case was reset for November 3, 2020, but following a motion to clarify, the court entered an order clarifying that the trial date was February 2, 2021.

expert, counsel replied, "Um, no, Your Honor, he can prove it up." Nonetheless, counsel stated that the expert would be "helpful." When the hearing concluded, the court entered an order striking Husband's tracing expert.

The case was tried to the court on February 2, 2021. When the trial concluded, the judge issued a memorandum decision. Husband moved for reconsideration and objected to the proposed final decree. The court denied the motion, overruled the objections, and entered the Decree.

The court subsequently filed findings of fact and conclusions of law. Husband objected and requested additional findings, which were not made. This appeal followed.

## II.    Analysis

### A.    Excluding Expert

Husband's first issue argues the trial court abused its discretion by striking the expert and denying his motion for continuance.

We review the trial court's exclusion of evidence under an abuse of discretion standard. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018). A trial court abuses its discretion when it acts without reference to guiding rules and principles so that its ruling is arbitrary or unreasonable. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Sierad v. Barnett*, 164 S.W.3d 471, 481 (Tex. App.—Dallas 2005, no pet.).

Rule 193.6(a) provides:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

> (1) There was good cause for the failure to make, amend, or supplement the discovery response; or

> (2) The failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a); *see Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992); *In re D.W.G.K.*, 558 S.W.3d 671, 679 (Tex. App.—Texarkana 2018, pet. denied). Exclusion is mandatory and automatic unless the court finds there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party. *In re D.W.G.K*, 558 S.W.3d at 679 (citing TEX. R. CIV. P. 193.6(a); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986) (per curiam). The party seeking to introduce evidence bears the burden of establishing good cause or the lack of unfair surprise or prejudice. TEX. R. CIV. P. 193.6(b). The trial court has discretion in determining whether the offering party met this burden, and the record must support the trial court's finding. *In re D.W.G.K*, 558 S.W.3d at 679; *In re Matthews*, No. 10-21-00296-CV, 2022 WL 3651391, at *3 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.).

Here, it is undisputed that the expert designation was untimely. The court's order granting Husband's first motion for continuance explicitly stated that

–4–

discovery deadlines would not be extended. Thus, Husband had the burden to establish either good cause, or the absence of surprise or unfair prejudice. TEX. R. CIV. P. 193.6(a); *Perez v. Embree Const. Grp., Inc.*, 228 S.W.3d 875, 884 (Tex. App.—Austin 2007, pet. denied).

Unfair surprise or prejudice.

At the hearing, Husband argued that there was no unfair surprise or prejudice because the parties were aware that Husband owned separate property. Husband's analysis misplaces focus on the parties' awareness of the *issue* before the court. Proving an absence of unfair surprise or prejudice requires the court to focus on whether the *evidence* will cause unfair surprise or prejudice. *See Spin Doctor Golf, Inc. v. Paymentech, L.P.,* No. 05-11-01014-CV, 2013 WL 3355199, at *3 (Tex. App. –Dallas 2013, pet. denied) (mem. op.). In this instance, it is immaterial that the parties were aware of the existence of separate property. The question that Husband must answer is whether the testimony and reports of his expert would cause unfair surprise or prejudice to Wife. He makes no effort to do so.

Husband further argues that the expert was necessary for a just and right division in addition to protecting his separate property. This argument addresses the importance of the evidence to Husband's case but does little to satisfy his burden. The fact that a party needs an expert to establish its cause of action does not establish that other parties will not be unfairly surprised by the late designation of an expert.

*PopCap Games, Inc. v. MumboJumbo, LLC,* 350 S.W.3d 699, 718 (Tex. App.— Dallas 2011, pet. denied).

Finally, Husband argues that  wife had "just over 30 days to review any documents" from the expert, which he claims should have been "enough time." Husband offers no authority to support why his estimation of time required to review late filed discovery should supplant the rules of civil procedure or the trial court's scheduling order.

Husband failed to meet his burden to show absence of unfair surprise or unfair prejudice.

Good cause.

Husband also argues that there was good cause because counsel withdrew and new counsel was substituted within thirty days before trial. But Husband offers no explanation as to how the withdrawal and substitution of counsel caused the untimely designation. The untimely designation was made by former counsel before new counsel appeared.

Husband also argues that he established good cause at the hearing because the expert was necessary for Husband to prove his separate property claims and for the court to make a just and right division of the property. The record demonstrates, however, that Husband told the court the expert testimony would be "helpful," but was not necessary for Husband to prove he owned separate property.

As the Texas Supreme Court has observed, "[i]t would hardly be right to reward competent counsel's diligent preparation by excusing his opponent from complying with the requirements of the rules." *Alvarado*, 830 S.W.2d 915. It was within the trial court's discretion to deny Husband the opportunity to call an expert witness that was not properly designated by the relevant deadlines. *See Crawford v. Hope*, 898 S.W.2d 937, 944 (Tex. App.—Amarillo 1995, writ denied). Under the circumstances present here, the court did not abuse that discretion.

Motion for Continuance.

We also reject Husband's argument concerning the motion for continuance. Although the motion does not appear in the clerk's record, it appears that prior counsel moved for a second continuance when he moved to withdraw. That motion was set for the January 21 hearing. During that hearing, counsel briefly mentioned that "if petitioner needs additional time to do additional discovery or retain their own expert, then they failed to show how delaying this trial a brief amount of time to allow her to do so would unfairly prejudice her." But otherwise, the Motion for Continuance was not mentioned in the hearing. The continuance was not mentioned when the parties appeared for trial. The record reflects that the court did not rule on the motion.

As a prerequisite to presenting a complaint for appellate review, the record must show that (1) the complaint was made to the trial court by a timely request, objection, or motion; and (2) the trial court ruled on the request, either expressly or

implicitly, or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1. Because Husband did not request or obtain a ruling on the second motion for continuance, nothing has been preserved for our review. *See In re W.A.B.*, No. 14-18-00181-CV, 2019 WL 2181205, at *2 (Tex. App.—Houston [14th Dist.] May 21, 2019, no pet.) (mem. op.) (challenge to the trial court's denial of motion for continuance was not preserved where the record did not show presentation of the motion to the trial court with a request for a ruling or that the party otherwise brought it to the trial court's attention before the final judgment was rendered); *Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 449 (Tex. App.—Dallas 2011, no pet.) (holding error not preserved where the record did not show appellant brought her motions to the trial court's attention or that the trial court ruled on them).

Husband's first issue is resolved against him.

## B.    Separate Property

The trial court found that Husband owned certain assets prior to the marriage or acquired them during the marriage by gift, devise, or descent, and confirmed that those assets were Husband's separate property. That property included:

- AXA Advisors Brokerage Account IRA-6782……. $31,430.00
- Alliance Bernstein X0049……………………………. 3,188.00
- Amundi Pioneer…………………………………… $36, 201.86
- Guns
- JW Fitzpatrick Family Trust

- Grandfather clock

The court further found that Husband received disability payments and confirmed that part of the Chase savings account where those payments were deposited was Husband's separate property. Specifically, the court concluded that 1% of the Chase savings account was community property and 99% of the account was Husband's separate property. The court awarded Husband $166,649.90 of the Chase account and Wife $2,012.60.

Husband claimed that two other accounts were separate property—the AXA Brokerage 8913 account ("Brokerage account") with $94,240.00 in funds and the AXA Structured Cap account 8558 ("Cap account") with $58,009.00 in funds. But the court found that the Brokerage account and the Cap account were community property and awarded the value of these accounts to Wife. Husband's third issue argues the evidence was factually and legally sufficient to prove that the Brokerage account and the Cap account were his separate property. We disagree.

We review an alleged property characterization error under an abuse of discretion standard. *Sink v. Sink*, 364 S.W.3d 340, 343–44 (Tex. App.— Dallas 2012, no pet.). Specifically, we must determine whether the trial court's separate property finding is supported by clear and convincing evidence. *Id.* In making this determination, we indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property. *Sink*, 364 S.W.3d at 343. We reverse the trial court's ruling only if the record demonstrates that the trial

–9–

court clearly abused its discretion, and the error materially affected the just and right division of the community estate. *Id.*

"The characterization of property as community or separate is determined by the inception of title to the property, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested." *Sink*, 364 S.W.3d at 344; *see also* TEX. FAM. CODE ANN. § 3.404(a). "Inception of title occurs when a party first has a right or claim to the property by virtue of which title is finally vested." *Pettitt v. Pettitt*, 704 S.W.2d 921, 924 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). If the inception of title occurred before the marriage began, then the property may be characterized as separate property, but if the inception of title occurred after the marriage began, then the property is generally considered to be community property. *Attaguile v. Attaguile*, 584 S.W.3d 163, 173 (Tex. App.—El Paso 2018, no pet.).

Separate property consists of property owned or claimed by the spouse before marriage, including property acquired by the spouse during marriage by gift, devise, or descent and recovery for certain personal injuries sustained during the marriage. TEX. FAM. CODE ANN § 3.001(1)–(3); *Sakyi v. Sakyi*, No. 05-21-00960-CV, 2023 WL 154861, at *3 (Tex. App.—Dallas, pet. filed) (mem. op.). "Community property consists of the property, other than separate property, acquired by either spouse during marriage." *Id*. § 3.002; *see also In re D.V.D.*, No. 05-17-00268-CV, 2018 WL 2316014, at *3 (Tex. App.—Dallas May 22, 2019, no pet.) (mem. op.).

–10–

Only community property is subject to the trial court's just and right division. *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied). All property on hand at the time of the divorce is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). This is a rebuttable presumption and a spouse who claims any asset as separate property must rebut this presumption by clear and convincing evidence. *Id*. § 3.003(b*); see also In re Estate of Hanau*, 730 S.W.2d 663, 667 (Tex. 1987) (burden is on spouse claiming separate property to trace and clearly identify the property claimed to be separate). Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C*., 96 S.W.3d 256, 264 (Tex. 2002).

Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the community presumption "by tracing the assets on hand during the marriage back to the property that, because of its time and manner of acquisition, is separate in character." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.) (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975)); *In re Marriage of Nash*, 644 S.W.3d 683, 696–97 (Tex. App.—Texarkana 2022, no pet.) (citations & quotations omitted) (must trace assets on hand during marriage back to property that is separate in character). If the evidence shows that separate and community property

have been so comingled as to defy resegregation and identification, the community presumption prevails. *Hanau,* 730 S.W.2d at 667.

As a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also* TEX. FAM. CODE ANN § 3.003(b). Likewise, testimony that some portion of comingled property is separate property, standing alone, is insufficient to rebut the community presumption. *Zagorski*, 116 S.W.3d at 316. It is also not enough to show that separate funds could have been the source of a subsequent deposit of funds. *Latham v. Allison*, 560 S.W.2d 481, 485 (Tex. App.—Fort Worth 1977, writ ref'd n.r.e.). And the clear and convincing burden is not satisfied when characterizing the property at issue as separate property requires surmise or speculation by the court. *See McKinley v. McKinley*, 496 S.W.2d 540, 544 (Tex. 1973). Any doubt as to the character of the property should be resolved in favor of the community estate. *Moon v. Schef*, No. 05-20-00105-CV, 2022 WL 854916, at *3 (Tex. App.—Dallas Mar. 23, 2022, no pet.) (mem. op.); *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

At trial, the court admitted Husband's documentation summarizing deposits and withdrawals from the Chase savings account (the "Tracing exhibit"). Husband testified that he opened the Brokerage account with $100,000 from the Chase savings account and opened the Cap account with $45,000 from the Chase savings

–12–

account. On appeal, Husband insists this constitutes clear and convincing evidence that the Brokerage and Cap accounts are his separate property.

We note at the outset that the court did not confirm the entirety of the Chase savings account as Husband's separate property, and Husband does not challenge this finding on appeal. The court found that some of the Chase savings account was community property and some was Husband's separate property. Husband's testimony supports this finding. Specifically, Husband testified that the Chase savings account included both community and separate property.

Both the Tracing exhibit and Husband's testimony show that the Brokerage account was funded with $73,437.54 of community property and $26,562.46 of separate property from the Chase account. Husband acknowledged that after the funding, there was no community property remaining in the Chase account.

Likewise, the Tracing exhibit and Husband's testimony do not establish that the Cap account (which was established before the brokerage account) was funded with separate property. On the contrary, the Husband's evidence establishes the Cap account was funded completely with community property. After the Cap account was opened, subsequent statements are not traced. Those statements show that from November 2017 through April 2020, assets within the account were bought and sold, and interest and dividends were received and reinvested. There is no evidence of additions to the account from any other source.

Moreover, the rest of Husband's evidence is contradictory. His first inventory and appraisal states that the Cap and Brokerage accounts are 100% community, while his amended inventory categorizes the accounts as separate property. Husband's trial evidence assigns several different values to his claimed separate property; his amended inventory differs from the Tracing exhibit and differs from what he claims on appeal. At trial, Husband testified that at least part of the Brokerage account was his separate property. In addition, Husband's requested relief exhibit reflects that the accounts are partially separate property and partially community property.

Therefore, the trial court did not err in concluding that Husband failed to prove by clear and convincing evidence that the Cap and Brokerage accounts are his separate property. *See Sanchez v. Wales*, No. 05-20-00485-CV, 2022 WL 1055376, at *7 (Tex. App.—Dallas Apr. 8, 2022, no pet.) (mem. op.) (no clear and convincing evidence of separate property); *Leggio v. Florian*, No. 14-21-00168-CV, 2022 WL 3093538, at *3 (Tex. App.—Houston [14th Dist.] Aug. 4, 2022, no pet.) (mem. op.) (same). Husband's third issue is resolved against him.

## C.    Cruelty and Adultery

Husband's second issue argues the evidence is insufficient to support the trial court's findings of cruel treatment and adultery.

We review trial court's findings of fault in the divorce under an abuse-of-discretion standard. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 382 (Tex.

App.—Dallas 2013, no pet.). In family law cases, the abuse-of-discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to the assessment of whether the trial court abused its discretion. *Moroch v. Collins*, 174 S.W.3d. 849, 857 (Tex. App.—Dallas 2005, pet. denied.); *Hinton v. Burns*, 433 S.W.3d 189, 194 (Tex. App.—Dallas 2014, no pet.).

In reviewing the evidence for legal sufficiency, we look at all the evidence in the light most favorable to the judgment to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *Moroch,* 174 S.W.3d at 858. We must assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 858. In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Moroch*, 174 S.W.3d at 858.

A trial court "may grant a divorce in favor of one spouse if the other spouse has committed adultery." TEX. FAM. CODE ANN. § 6.003. Adultery means the "voluntary sexual intercourse of a married person with one not the spouse." *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *Morrison v.*

*Morrison*, 713 S.W.2d 377, 380 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Adultery can be shown by direct or circumstantial evidence. *Id.* However, there must be clear and positive proof and mere suggestion and innuendo are insufficient. *Id.*

In the present case, the evidence is sufficient to support the trial court's conclusion that Husband committed adultery. Uncontroverted testimony established that Husband had a pornography problem, and that Wife found over 300 sticky notes in Husband's car with women's names, numbers, and addresses. On one occasion, Husband texted Wife saying it is okay to be "jerked off" by someone else and that activity is not considered cheating.

Wife found text messages between Husband and several women. He sent pictures and messages to these women, saying things like "going to bed my love," and asking directions to the women's locations and their hourly rates. Wife testified that Husband was texting with other women when he was in the hospital while Wife was sitting beside him.

Husband has a Victoria's Secret credit card. Wife found a Victoria's Secret bag containing lingerie that was not her size.

One of the women Husband communicated with was named "Yoko." At the temporary orders hearing, Husband testified that he met Yoko once for sex. But in discovery he said he had never met Yoko. Then, at trial, Husband claimed Yoko was his physical therapist. The link in Husband's text message to Yoko however, shows that Yoko is part of a companion service.

Husband bought women lingerie, clothes, iPads, and Louis Vuitton items. When asked if he would ask women for underwear and shoe sizes, Husband testified that he did not recall.

Husband testified that he has not had sex with Wife in thirty-one years. Nonetheless, he purchased a penis pump and accessories, and paid for these items with community funds. Although Husband testified that he did not meet women in person, we defer to the fact finder's credibility determinations. *See Newberry v. Newberry*, 351 S.W.3d 552, 536 (Tex. App.—El Paso 2011, no pet.).

Contrary to Husband's assertions, the evidence of adultery consists of more than innuendo and suggestion. Accordingly, the trial court did not abuse its discretion in concluding that Husband committed adultery. *See Escalante v. Escalante*, 632 S.W.3d 573, 579–80 (Tex. App.—El Paso 2020, no pet.).

Although Husband also challenges the trial court's determination that he was at fault for breaking up the marriage on cruelty grounds, the adultery finding is sufficient to support a finding of fault. Therefore, we need not consider the court's cruelty determination as an additional ground for fault. *See* TEX. R. APP. P. 47.1. Husband's second issue is resolved against him.

## D.    Just and Right Division

Husband's fourth issue argues the evidence is insufficient to support the trial court's findings that Wife is entitled to a disproportionate share of the community estate. Specifically, he argues that even if he was at fault for the divorce, the trial

–17–

court cannot award Wife a disproportionate share to punish him. He further argues that the court failed to consider his temporary support payments, expenditures on community property maintenance, his attorney's fees, and that he was also unemployed at the time of trial.

The division of a community estate in divorce must be just and right, having due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001. "Just" and "right" are broad terms. *See Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018). A trial court should consider many factors, including the spouses' capacities and the nature of the property. The court may consider (1) the parties' relative fault in ending the marriage, (2) the length of the marriage, (3) the parties' disparity in income or earning capacity, (4) the parties' capacities and abilities, (5) the parties' relative needs and financial condition, (6) future business prospects, (7) the parties' education and physical condition, (8) the disparity in age, (9) the size of separate estates, and (10) the nature of the property to be divided. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Although the marital estate need not be divided equally, the division must be equitable. *In re Marriage of C.A.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

In a fault-based divorce, the court may consider the conduct of the errant spouse in making a disproportionate division. *Id.* For instance, a trial court's finding of adultery can support the disproportionate division of community property. *See, e.g., In re K.R.C.*, No. 05-13-01419-CV, 2015 WL 7731784, at *4 (Tex. App.—

–18–

Dallas Dec. 1, 2015, pet. denied) (mem. op.) (affirming trial court's disproportionate division of community property that was based on adultery and abuse findings). The trial court may also consider that a spouse unfairly depleted or dissipated community assets. *Nowzaradan v. Nowzaradan*, No. 01-05-00094-CV, 2007 WL 441709, at *7 (Tex. App.—Houston [1st Dist.] Feb. 8, 2007, no pet.).

Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision. *See Murff*, 615 S.W.2d at 698. Accordingly, a trial court's property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion and the error materially affected the just and right division of the community estate. *See Taylor v. Taylor*, No. 05-20-01088-CV, 2022 WL 3097811, at *3 (Tex. App.—Dallas Aug. 4, 2022, no pet.); *Boyd*, 131 S.W.3d at 610.

When conducting a bench trial in a divorce case, the trial court has the opportunity to "observe the parties, determine their credibility, and evaluate their needs and potential, both social and economic." *Hailey v. Hailey*, 176 S.W.3d 374, 382 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court "is empowered to apply its understanding and experience," and we recognize that "mathematical precision in dividing property in a divorce is usually not possible." *Id.* Accordingly, we presume that the trial court properly exercised its discretion in dividing the marital estate. *Id.* at 380 (citing *Murff*, 615 S.W.2d at 699).

The court's findings in support of a disproportionate division include findings that: (i) Husband cancelled Wife's access to community bank accounts and credit cards during the pendency of the divorce, while Husband had access to salary, rental income, trust distributions, and investment income, (ii) Wife was forced to use her separate property to pay living expenses and attorney's fees; (iii) Husband was not timely with court-ordered spousal support payments and unilaterally reduced amounts paid, (iv) Husband failed to make court-ordered repairs at Wife's residence and failed to pay court-ordered attorney's fees.

The court further found that:

- Husband was at fault for the breakup of the marriage and Wife would be better off financially if the marriage was not dissolved,

- There is a disparity in Husband's and Wife's income and education,

- Wife is 64 years old and stayed at home during the majority of the marriage to raise the couple's child,

- Wife was unable to find full-time work during the pendency of the divorce due to her age, lack of training and education, and the pandemic,

- Wife does not have enough money to meet her minimum reasonable needs and doesn't have the ability to earn enough money to do so, and

- Husband committed fraud on the community by spending money on women other than Wife, including the purchase of Louis Vuitton items, shoes, clothing, iPads, and Victoria's Secret lingerie.

We have concluded that the evidence is sufficient to support the trial court's finding of fault.[2] But even without this finding, the evidence supports the trial court's conclusion that Wife should be awarded a disproportionate share of the community estate.

Husband's assertion that the trial court failed to consider the temporary support payments is misplaced. The court's findings reflect that the court did consider these payments and found them lacking and not in compliance with what the court ordered. *See Jones v. Jones*, 699 S.W.2d 583, 585 (Tex. App.—Texarkana 1985, no writ) (failure to make court-ordered temporary support payments may justify a disproportionate award from the community estate). Likewise, the court also considered the expenses Husband incurred maintaining community property, and again, found that Husband failed to comply with the court's orders. Moreover, Husband does not identify any evidence itemizing these expenditures or requesting adjustments based on the expenditures, nor does his brief identify the amount he claims the court failed to consider.

Husband's argument that he is also in his sixties and is unemployed also fails. The evidence reflects that Husband has a degree in architecture and voluntarily retired while the divorce was pending because he claimed the divorce was affecting his job performance. There was no evidence that he is seeking or has sought other

---

[2] Of the findings concerning the disproportionate award of the community estate, the only finding Husband challenges is the finding of fault.

employment. On the other hand, Wife's only formal training is some trade school. She stayed home during the majority of the marriage to care for the child, lacks computer training, and does not own a computer. She has worked part-time but has had difficulty finding full-time employment due to her age, lack of training and education, and the pandemic.

There is also no evidence to establish that Husband is entitled to attorney's fees. The record reflects that Husband used community funds to pay $87,000 in attorney's fees. Husband testified that he still owed $32,000. Although he noted the amount of attorney's fees on his spreadsheet, the court admitted the spreadsheet as a summary and said the numbers would not be considered without backup documentation. But Husband did not offer expert testimony concerning attorney's fees or provide billing records or other documentation to support his claim. Therefore, there was no competent evidence upon which the court could base an attorney's fees award to Husband.[3]

On the record before us, indulging, as we must, every reasonable presumption in favor of the trial court's proper exercise of discretion in dividing marital property, we conclude there is no clear abuse of discretion in the court's property division that materially affected the just and right division of the community estate. Husband's fourth issue is resolved against him.

---

[3] Wife's attorney's fees were supported by expert testimony.

### III. Conclusion

Having resolved all of Husband's issues against him, we affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

220001F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JOHN MICHAEL FITZPATRICK,
Appellant

No. 05-22-00001-CV      V.

DEBORAH LYNN FITZPATRICK,
Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-50901-
2020.
Opinion delivered by Justice Garcia.
Justices Reichek and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DEBORAH LYNN FITZPATRICK recover her costs of this appeal from appellant JOHN MICHAEL FITZPATRICK.

Judgment entered May 8, 2023.